## City of Johnstown v. Troutman

Before McCann, P. J., McKenrick and Griffith, JJ.
*James A. Graham,* for City of Johnstown.
*Frank P. Barnhart,* for defendant.

GRIFFITH, J., April 28, 1947.—Defendant was convicted of violating section 14 of General Ordinance No. 2 of the City of Johnstown. From said conviction an appeal was taken to this court, and it is urged that defendant should be found not guilty, because the information does not contain a specific charge against

defendant with a full statement of the offense, because the information does not aver wilful conduct to the annoyance of the public or that the traveling public was annoyed, and because the mayor was without jurisdiction for the reason that the offense of disorderly conduct is covered as a Commonwealth offense by The Penal Code of June 24, 1939, P. L. 872, sec. 406, 18 PS §4406.

At the oral argument, counsel for defendant decided not to press the first two contentions, in order that the last contention might be passed upon. It is also obvious section 14 of General Ordinance No. 2 of the City of Johnstown does not attempt to define the offense of disorderly conduct, but is merely a repetition of section 2005 of the Third Class City Law of June 23, 1931, P. L. 932, sec. 2005, 53 PS §12198-2005. However, since counsel for defendant is not pressing the invalidity of the ordinance on this point, we shall not discuss it.

Section 406 of the Act of 1939 provides as follows:

"Whoever wilfully makes or causes to be made any loud, boisterous and unseemly noise or disturbance to the annoyance of the peaceable residents near by, or near to any public highway, road, street, lane, alley, park, square, or common, whereby the public peace is broken or disturbed or the traveling public annoyed, is guilty of the offense of disorderly conduct, and upon conviction thereof in a summary proceeding, shall be sentenced to pay the costs of prosecution and to pay a fine not exceeding ten dollars ($10), and in default of the payment thereof, shall be imprisoned for a period not exceeding thirty (30) days."

The Third Class City Law of 1931, sec. 2403, as last amended by the Act of March 10, 1937, P. L. 41, sec. 1, 53 PS §12198-2403(54), grants to the council of each third class city the following powers:

". . . to make and adopt all such ordinances . . . not inconsistent with or restrained by the Constitution

and laws of this Commonwealth, as may be expedient or necessary for . . . maintenance of the peace, good government, safety and welfare of the city . . . and to enforce all ordinances inflicting penalties upon inhabitants or other persons for violations thereof, not exceeding three hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, not exceeding ninety days, if the amount of said judgment and costs shall not be paid: . . ."

In Lesley v. Kite, 192 Pa. 268, 274, the court said:

"Nothing is better settled than that a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the corporation, and therefore denied: Dillon on Municipal Corporations, sec. 89."

The above was recently quoted by the Supreme Court in Valley Deposit and Trust Company of Belle Vernon, 311 Pa. 495, 498.

However, the city contends that the legislature specifically authorized cities of the third class to prohibit and punish by ordinance the act of disorderly conduct by virtue of the provisions of section 2005 of the Third Class City Law of 1931. This section, which appears under "Article XX, Police Bureau", reads as follows:

"Powers of policemen to arrest.

"Policemen shall be ex-officio constables of the city, and shall and may, without warrant and upon view, arrest and commit for hearing any and all persons guilty of breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or who may be en-

gaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or violating any of the ordinances of said city for the violation of which a fine or penalty is imposed."

We cannot agree with the city's contention that the section above quoted may be deemed to be specific authorization to punish the offense of disorderly conduct by ordinance. As we see it, this section merely authorizes policemen in third class cities to arrest and commit, without warrant and upon view, all persons guilty of, inter alia, disorderly conduct. The "disorderly conduct" referred to was the Commonwealth charge then defined by the Act of June 25, 1895, P. L. 271, 18 PS §421; now by The Penal Code of 1939, P. L. 872, sec. 406, supra.

There being no specific authorization by the legislature permitting cities of the third class to prohibit and punish disorderly conduct by ordinance, the question is whether the general welfare clause, section 2403, supra, of the third class city code is sufficient to authorize such ordinance in view of the fact that the Commonwealth has already entered the field and has made disorderly conduct an offense against the Commonwealth.

The city cites the case of Cusumano et al. v. Philadelphia et al., 37 D. & C. 597, for the rule that where the legislature acts to authorize regulation of the same subject matter by the municipality, the municipality may enact local regulations not inconsistent with or restrained by laws of the Commonwealth on the same subject. In that case, the ordinance concerned the regulation of the conduct of barber shops and the legislature by the Act of May 9, 1935, P. L. 158, had already entered the field. However, the act specifically provided that municipalities were not to be prohibited from adopting appropriate ordinances to regulate barber shops not inconsistent with the provi-

sions of the act of assembly. As we have seen, section 2005, supra, of the Third Class City Law may not be construed to be a specific authorization granting third class cities the power to legislate by ordinance on the subject of disorderly conduct. Therefore, what was said by the court in the Cusumano case in this respect is not applicable to our situation.

The question whether a municipal corporation may regulate or punish by ordinance an act also regulated or made punishable by a general law of the State has frequently arisen. There seems to be no doubt but that an ordinance enacted in pursuance of express authority to legislate upon a particular subject is valid although there may be statutes covering the same subject.

"There is quite a conflict of authority as to the validity of municipal police ordinances enacted under a general welfare clause or other general grant of power where the offense is also covered by laws of the state. In many states it is held that under a general delegation of power a municipal corporation may regulate acts or impose penalties for acts which by the statutes of the state are regulated or declared to be crimes. . . . Entirely contrary in result, it is held in other jurisdictions that where the state legislature has made provision for the regulation of conduct or the punishment of an offense, it has manifested its intention that the subject matter shall be fully covered by the statute, and that a municipality, under its general powers, cannot regulate the same conduct or make the same act an offense against a municipal ordinance as well": 37 Am. Jur., Municipal Corporations, §166.

Since we have seen that there is no express authority given to council under the third class city code to legislate upon the subject of disorderly conduct, the ordinance, if valid, must rely for its validity on the general

welfare clause, section 2403, supra, of the Third Class City Law.

In 43 C. J. 222, §223, we find the following:

". . . it is generally held that municipal corporations may prohibit and punish acts which are also prohibited and punishable under the general laws of the state . . . but this power must be vested in the corporation either by direct grant or by necessary implication."

There has been no direct grant of this power to third class cities in Pennsylvania, nor do we believe any of the other powers given to third class cities necessarily imply the right to prohibit disorderly conduct by ordinance.

In Moran v. City of Atlanta, 102 Ga. 840, 30 S. E. 298, the court said that a municipal corporation cannot, in the absence of express legislative authority so to do, enact a valid ordinance for the punishment of an act which constitutes an offense against a penal statute, and such authority cannot be inferred from the general welfare clause in the city's charter.

This matter has been discussed by the lower courts of this Commonwealth on a number of occasions. In Commonwealth ex rel. v. Scavo, 51 D. & C. 459, defendant appealed from a finding of guilty of the charge of violating a borough ordinance prohibiting disorderly conduct. The court said (p. 460) :

"It is well-established law that all municipalities in the State have only such authority as has been expressly delegated to them by the legislature. It follows that where the State has, by act of legislature, made a certain offense punishable by indictment and trial by jury, unless expressly authorized by the legislature, municipalities cannot, by ordinance, punish the same offense by a summary conviction."

In Tea v. New Brighton Borough, 4 D. & C. 434, the court had before it a borough ordinance making it unlawful to sell or possess intoxicating liquors. The

court found that a general grant of authority in the Borough Code to prohibit noxious arts, trades or businesses, could not be construed as to confer authority to prohibit the commission of an act which had been declared by the legislature to be a crime against the State.

In Commonwealth v. Jones, 16 Mun. L. R. 102 (Westmoreland County), the court found that the borough in that case did not have authority to enact an ordinance prohibiting the maintenance of a gambling house for the reason that the jurisdiction for such an offense was in the court of quarter sessions, it being a misdemeanor.

In Commonwealth ex rel. Yasankaitis v. Warden of County Jail, 17 Mun. L. R. 33 (Washington County), the court found that a borough ordinance defining disorderly conduct in the same terms as the act of assembly was invalid, at least to the extent that the ordinance provided a penalty in excess of that provided by the act.

In Borough of New Wilmington v. Boyd et al., 10 Mun. L. R. 202, 8 Lehigh 175, the court found an ordinance of the borough prohibiting and punishing disorderly conduct to be invalid. The court said that if the ordinance could be sustained at all, it must be sustained under the then general welfare clause of the borough, which is similar to the general welfare clause contained in the Third Class City Law, viz., to make such laws, ordinances, bylaws and regulations not inconsistent with the laws of this Commonwealth as council shall deem necessary for the good order and government of the borough. However, the court found that the general welfare clause did not sustain the ordinance, because it was limited to ordinances "not inconsistent with the laws of this Commonwealth"; and also found that the then act of the legislature defining disorderly conduct, which is similar

to the one now in force, was inconsistent with a borough ordinance prohibiting disorderly conduct. After saying that municipalities do not have authority to pass ordinances providing penalties for acts which are criminal offenses against the State, the court quoted from Borough of Shippensburg v. Schoch, 1 Mun. L. R. 77, as follows (p. 80):

"It would certainly be as novel as unwarranted to hold that the councils of a borough might ordain offenses and designate penalties and punishments in cases where the Legislature had already made enactments for that purpose."

In 3 McQuillin, Municipal Corporations (2d ed. revised), §923, we find the following:

"Under the usual grant of municipal powers, which, in general terms, includes the authority to enact all necessary ordinances to preserve the peace and advance the local government of the community, the local corporation cannot provide by ordinance for the punishment of an act constituting a misdemeanor or crime by statute."

Although expressed with some diffidence, we believe that the rule in Pennsylvania is the rule adopted by 2 Dillon on Municipal Corporations (5th ed.), §632, as follows:

". . . I. A general grant of power, such as mere authority to make by-laws, or authority to make by-laws for the good government of the place, and the like, should not be held to confer authority upon the corporation to make an ordinance punishing an act—for example, an assault and battery—which is made punishable as a criminal offence by the laws of the State. . . . II. Where the act is, in its nature, one which constitutes two offences, one against the State and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offence under the State law; but the legislative intention that this may be done ought to be

manifest and unmistakable, or the power in the corporation should be held not to exist. III. Where the act or matter covered by the charter or ordinance, and by the State law, is not essentially criminal in its nature, and is one which is generally confided to the supervision and control of the local government of cities and towns, but is also of a nature to require general legislation, the intention that the municipal government should have power to make new, further, and more definite regulations, and enforce them by appropriate penalties, will be inferred from language which would not be sufficient were the matter one not specially relating to corporate duties, and fully provided for by the general laws."

In applying the rule as above stated to the facts in the present case, it will be seen (1) that the grant of power was general and that the offense was punishable as a criminal offense by the laws of the State; (2) that the legislative intention to permit the municipality to punish the offense is neither manifest nor unmistakable, and (3) that the matter is essentially criminal in nature, and that therefore the legislative intention to permit the municipality to make regulations with appropriate penalties may not be inferred from the language used.

Our conclusion is that that portion of section 14 of General Ordinance No. 2 of the City of Johnstown concerning disorderly conduct is invalid, and we must, therefore, enter an appropriate decree.

We realize the advantages of cities of the third class having the power to define and punish disorderly conduct within the city by appropriate ordinances, but the granting or withholding of such power is a matter exclusively for the legislature and not for the courts. Some years ago the legislature saw fit to permit boroughs to define and punish disorderly conduct by ordinance. See Act of May 16, 1921, P. L. 581, which gave borough councils the right "To adopt ordinances defin-

ing disorderly conduct within the limits of the borough, and to provide in such ordinances for the imposition of penalties for the violation thereof." This act was an amendment to the Borough Code of May 14, 1915, P. L. 312, which contained no such provision. Certainly the need for local regulation of disorderly conduct is not less in the more populous and congested areas included within the limits of our cities of the third class than it is in our boroughs. There would, therefore, seem to be no good reason why the legislature should not grant to such cities the power it has already given to boroughs.

### Decree

And now, April 28, 1947, after argument and upon due consideration, defendant, Leonard Troutman, is found not guilty of the offense of disorderly conduct; and it is hereby ordered and directed that he be discharged, and that the City of Johnstown return to him the fine and costs which he has heretofore paid.