## Harrisburg v. Gable

*Spencer G. Hall*, City Solicitor, and *James S. Bowman*, Assistant City Solicitor, for City of Harrisburg.

*Christian V. Graf*, for defendant.

KREIDER, J., February 27, 1956.—Defendant in this proceeding was adjudged guilty by Alderman J. L. Madden, Jr., sitting at the request of the Mayor of the City of Harrisburg, of violating an ordinance enacted by the city on February 25, 1949, prohibiting disorderly conduct. A fine of $10 was imposed.

In his "Exceptions to the Record" returned by the alderman, defendant's first and principal contention is that his arrest was illegal and void because the charge against him was brought in the name of the City of Harrisburg and not the Commonwealth of Pennsylvania. He contends that the city cannot legislate by ordinance on the subject of disorderly conduct because the legislature had previously created the offense of disorderly conduct in The Penal Code of Pennsylvania, section 406 of the Act of June 24, 1939, P. L. 872, 18 PS §4406.

Prior to 1947 there would have been much force in defendant's contention in support of which he cites City of Johnstown v. Troutman, 60 D. & C. 1, decided April 28, 1947, Griffith, J. However, the legislature by the Act of June 10, 1947, P. L. 494, amended The Third Class City Law of June 23, 1931, P. L. 932, by adding a new clause 56 to section 2403 thereof, as follows:

"Section 2403. Specific Powers.—In addition to other powers granted by this act, the council of each city shall have power, by ordinance: . . .

"56. To define disorderly conduct within the limits of the city and to provide for the imposition of penalties for the violation thereof."

This clause 56 was further amended, and changed to clause 55, by the Act of June 28, 1951, P. L. 662, so that the same now provides, 53 PS §12198-2403:

"Section 2403. Specific Powers.—In addition to other powers granted by this act, the council of each city shall have power, by ordinance: . . .

"55. DISORDERLY CONDUCT.—To define disorderly conduct within the limits of the city and to provide for the imposition of penalties for such conduct in such amounts, without limitation except as in this act provided, as council shall establish, and notwithstanding any statutes of the Commonwealth upon disorderly conduct and the penalties therefor."

Pursuant to the said Act of 1947, the City Council of Harrisburg on February 25, 1949, passed ordinance no. 127, which is the basis of the charge in the instant case.

Defendant also relies upon Commonwealth ex rel. v. Klein, 73 D. & C. 470, 473 (1949), York Co. In that case the same contention was made which defendant advances in the instant case, to wit, "that the City of York had no lawful authority to pass penal legislation comprehending disorderly conduct especially since disorderly conduct was at the time a summary offense under State law. . . ." In disposing of this contention Judge Anderson said:

". . . Section 2005 of the Third Class City Law of June 23, 1931, P. L. 932, empowering local police officers to arrest on view for disorderly conduct, refers to this Commonwealth offense and does not impliedly authorize the creation of a municipal offense. Likewise it has frequently been held in Pennsylvania that a borough has no authority to pass duplicate penal legislation to that already enacted by the State in which the principle is precisely the same as involved in the instant case. The general holding of these cases is well epitomized in the following excerpt from Borough of Shippensburg v. Schock, 1 Mun. L. R. 77:

" 'It certainly would be as novel as unwarranted to hold that the councils of a borough might ordain offenses and designate penalties and punishments in cases where the Legislature has already made enactments for that purpose.' "

The court noted, however, that the legislature, since the decision in City of Johnstown v. Troutman, 60 D. & C. 1, had amended The Third Class City Law to include the power to define and punish disorderly conduct in third class cities by the Act of June 10, 1947, P. L. 494, but stated that "no such ordinance, however, has been ordained by the City of York since the passage of the Act. . . ." Consequently the ordinance was declared invalid and the appeal sustained.

Although we are impressed by the reasoning of the court in the Troutman and Klein cases, we cannot apply those decisions to the instant case because the Harrisburg ordinance was passed *after* the enactment of the Act of 1947 while the Johnstown and York ordinances were passed *prior* thereto. Therefore, we are constrained to overrule defendant's exception covering this point.

Another of defendant's exceptions attacks his arrest without a warrant and upon view. Defendant concedes that a police officer in a third class city does have the power to arrest without warrant and upon view for the offense of disorderly conduct. See section 2005 of The Third Class City Code of June 28, 1951, P. L. 662, 53 PS §12198-2005. He attempts to buttress this exception, however, by averring that if "the charge is based upon an ordinance, the arrest is illegal by reason of the fact that a City may not establish a Commonwealth offense by ordinance". Since we have concluded that the city was empowered to enact an ordinance prohibiting disorderly conduct, we think the officer had the right to arrest defendant without a warrant and upon view for a violation of the city's ordinance. Therefore, defendant's exception on this point cannot be sustained.

The remaining exceptions need not be considered because they do not fall within the scope of a certiorari proceeding which involves an attack upon the regu-

larity of the proceedings before the alderman or justice of the peace and does not go to a consideration of the merits: Commonwealth of Pennsylvania v. Benson, 94 Pa. Superior Ct. 10 (1928), Keller, J.

There is, however, another feature of the case which has given the members of this court some concern. It was stated at the argument by defendant's counsel that after defendant disobeyed the police officer by blowing the horn of his automobile, the officer pulled defendant out of his car, put a "hammer-lock" on his arm, marched him to a call box a half block away, placed him in a police station wagon and kept him confined in that vehicle for 20 minutes or more after it arrived at city hall. It was further stated that four well known and reputable citizens who witnessed the officer's conduct at Second and Forster Streets subsequently appeared at the preliminary hearing, some of them to testify to defendant's good reputation as a peaceful, law-abiding citizen, and all to voice their disapproval of the treatment accorded him. *The city solicitor did not deny any of the statements*, although he averred in defense of the officer that the latter was provoked by the persistent horn blowing of defendant (after being requested twice to cease and desist) and by similar conduct on the part of drivers of the other cars behind him. All persons in these cars were blocked from entering a parking place at the rear of their office building by a truck unloading material in a narrow dead-end street.

We think it was not necessary to transport defendant, who is a prominent and respected business man, to the city hall in a police station wagon (especially after he offered to use his own car for that purpose) and keep him locked in that vehicle for 20 minutes or more after his arrival. Such conduct on the part of the arresting officer, if it occurred as charged by defendant's counsel, was unwarranted and not in keep-

ing with the good reputation of the Harrisburg police force.

As stated above, however, we are confined in this certiorari proceeding to a consideration of the alleged defects appearing in the record of the proceedings before the alderman as set forth in defendant's exceptions. We find none which compel us to set aside the conviction. Accordingly, we are constrained to make the following

### Order

And now, February 27, 1956, defendant's exceptions are dismissed and the judgment of the alderman convicting defendant of disorderly conduct is hereby sustained.