Dissenting Opinion by
Flood, J.:
Section 62 of the Act of March 31, 1860, P. L. 427, 19 PS §1222, insofar as it authorizes the jury to impose costs upon an acquitted defendant and subjects him to commitment to jail upon failure to pay them, is a penal statute. Yet it does not say what conduct shall subject the acquitted defendant to this penalty. Consequently, when the jury determines that an acquitted defendant shall pay the costs and the court proceeds, in accordance with the statute, “forthwith” to “pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give security . . .” there is a violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States and Art. I, §9, of the Constitution of Pennsylvania. Chester v. Elam, 408 Pa. 350, 184 A. 2d 257 (1962).
The statute before us is a penal statute. It was so denominated by Mr. Justice Gibson, in Commonwealth v. Tilghman, 4 S. & R. 127 (1818), in considering the Act of 1804, of which §62 of the Act of 1860 is a faithful and literal reproduction. “I grant, that a statute imposing costs, is penal in its nature, and must be construed strictly . . . .” It is this opinion of Gibson, J., in the Tilghman case which is relied upon, mediately or immediately, by all the subsequent cases holding these two acts valid. In a later case, the Supreme *311 Court said: “The statute which empowers a grand or petit jury to punish with costs is penal, and to be strictly construed.” Clemens v. The Commonwealth, 7 Watts 485 (1838).
It is a penal statute because under it costs can be imposed only upon a defendant who has been indicted.
It is penal in that it may result in a jail commitment, such commitment being mandatory under the statute if the acquitted defendant does not pay the costs at once or give security to pay them within ten days. In this it is unlike statutes imposing costs in civil cases, such costs, in the absence of fraud, being enforceable only by execution against property. S. S. Pierce’s Appeal, 103 Pa. 27 (1883).
The legislature which adopted it evidently considered it penal because it was enacted as part of an act entitled “An Act to Consolidate, Revise and Amend the Laws of this Commonwealth relating to Penal Proceedings and Pleadings.”
Nor is the conclusion that this statute is penal in any way weakened by the fact that the imposition of costs, following a judgment of conviction, not acquittal, has been held for some purposes to be an incident of the judgment, rather than punishment for the crime. This apparently stems from Commonwealth v. Dunleavy, 16 Pa. Superior Ct. 380 (1901), which held that a suspended sentence on condition that costs be paid was not a sentence so as to destroy the court’s power later to revoke the suspension and impose a prison sentence. Cases like Commonwealth v. Soudani, 193 Pa. Superior Ct. 353, 165 A. 2d 709 (1960), holding the costs following a conviction are not part of the senténce, but are an incident of the judgment, cannot apply to defendants found not guilty. Costs on the defendant cannot possibly be “incident” to a judgment following a not guilty verdict. The statute provides that when the jury shall upon acquittal determine that *312 the prosecutor or the defendant shall pay the costs, “the court shall forthwith pass sentence to that effect.” The sentence as to an acquitted defendant can only be that he pay the costs. This is the actual judgment and not an incident to the judgment. The eases holding that the imposition of costs is an incident to a judgment of sentence upon a guilty verdict lend no support to. the proposition that the imposition of costs on an acquitted defendant is something other than punishment.
It is to be noted that even in civil cases the Supreme Court said, again speaking through Gibson, J.: “At common law, there were no costs expressly by name, but the plaintiff, where he failed, was punished in amercement pro falso elamore, and the defendant, where the judgment was against him in misereeordia cum expensis litis, for his unjust detention of the plaintiff’s right; and this was the foundation of the statutes which afterwards gave costs by name; so that costs, in their origin, were rather a punishment of the party paying, than a recompense to the party receiving them.” Musser v. Good, 11 S. & R. 247, 250 (1824).
No amount of dialectic can alter the fact that this statute provides that an accused may go to jail without having been convicted of any crime — indeed after having been acquitted of the only crime of which he was charged. This is depriving him of his liberty without due process of law under the cases which have superseded the authority of those relied upon by the majority.
This is the clear import of the decision of the United States Supreme Court in 1939 in Lanzetta v. New Jersey, 306 U.S. 451, the decision of this court in 1952 in Commonwealth v. Franklin, 172 Pa. Superior Ct. 152, 92 A. 2d 272, and the decision of the Supreme Court of Pennsylvania in 1962 in Chester v. Elam, 408 Pa. 350, 184 A. 2d 257.
*313 In Lanzetta the Supreme Court of the United States held that a statute violated due process which made it criminal to be a “gangster”, which was defined as “Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime in this or in any other State . . . The court held that the interpretation of the statute by the highest court of New Jersey did not save it from being too indefinite and too vague to enforce within the requirements of due process. The court speaking through Mr. Justice Butler further said: “It would be hard to hold that, in advance of judicial utterance upon the subject, they were bound to understand the challenged provision according to the language later used by the court .... The challenged provision condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment.”
The resemblance to the statute before us is obvious. The statute here condemns no act or omission. The majority points to the common law crimes, punishable under our statutes but defined only by the common law, i.e., decisions of the courts. The precise common law definitions of such crimes, e.g., murder, rape, burglary or arson, could not contrast more sharply than they do with the majority’s attempt to define what is punishable here — conduct “related to the prosecution”, “reprehensible conduct”, conduct “not reprehensible enough for a criminal conviction but sufficiently reprehensible to deserve an equal division of the costs”, conduct in the twilight zone between drunken driving and something less, or something reprehensible that does not constitute a crime, such as registering falsely at a hotel as husband and wife.
*314 In Commonwealth v. Franklin, supra, we held that the Statute of Edward III, authorizing the court to hold under bond to keep the peace “all them that be not of good fame”, was unconstitutionally .vague.
Finally in Chester v. Elam, supra, our Supreme Court said that the phrase “disorderly conduct” was unconstitutionally vague under both the Federal and Pennsylvania Constitutions, quoting from Lanzetta v. New Jersey, supra, as follows: “A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application lacks the first essential of due process of law.” What the statute before us forbids under penalty of imposition of costs upon an acquitted defendant, with imprisonment for nonpayment, is something undefined in the statute whose meaning can only be guessed at by men of common intelligence.
Only one of the appellate cases relied upon or cited by the majority (Wright v. Commonwealth, 77 Pa. 470 (1875)) may have considered the statute in the light of the Fourteenth Amendment, and it is not at all clear that even this case did so. The statement of the case (presumably by the reporter) is that the defendant assigned for error, among other things, that the provision we are considering in §62 of the Act of 1860 as. well as §1 of the Act of 1864, under which the defendant was indicted, was unconstitutional. While the opinion did discuss briefly the constitutionality of §1 of the Act of 1864, as to §62 of the Act of 1860 the court said only: “The objection to the imposition of costs, on the ground that a verdict of not guilty was rendered, is' equally futile. We must presume the jury had a good reason for doing so, arising in the conduct of the defendant. And even if the indictment had been so defective that no conviction could have rested upon it, still the right to impose costs existed. This was ex *315 pressly decided, and good reasons stated for the decision, in Commonwealth v. Tilghman, 4 S. & R. 127.” This opinion thus refers back to and relies upon the Tilghman case, supra, decided in 1818, and makes no reference to the Fourteenth Amendment to the Constitution of the United States or to the Constitution of Pennsylvania.
It must not be forgotten that a violation of due process can occur as a result of jury action as well as through the action of a judge. Such a violation occurs in cases in which a guilty verdict is based upon evidence obtained by illegal search and seizure, or in a trial for felony in which the defendant is not represented by counsel and has not intelligently waived such representation, or when there is any other unwaived violation of due process in the course of the trial.
This defendant has not been found guilty of a crime, or of refusing to pay for the machinery of justice which he has set in action improperly, or of some violation of another’s rights which the other has vindicated by winning a lawsuit against him. He is not being asked to pay because of some duty he has voluntarily assumed by marriage or parenthood, nor is he asked to pay indirectly the cost of having an inheritance or other property right vindicated.
The majority suggests that it is not necessary to give notice to the defendant of what he is to be tried for, since we can rely upon his presumed knowledge of the law that under the Act of 1860 costs may be imposed upon him if he is acquitted. But for what? The act does not say. Is it, as the majority and some other opinions indicate, because he has done “something reprehensible”, or because he may be guilty even though found not guilty? Against what is he to defend? Is he to be compelled to put in evidence his good character and thus give the prosecution the right to bring into evidence any previous offences?
*316 The majority say he has the opportunity to be heard upon his liability for costs, but about what? Is the district attorney to be permitted to discuss “reprehensible conduct” other than the crime charged, and is his counsel thus going to be compelled to scatter his defence so as to meet this indefinite charge as well as the crime for which he is indicted? Is the district attorney to be permitted to tell the jury that they may impose costs even if they have a reasonable doubt of his guilt? Surely this riddles the safeguard which the presumption of innocence and the Commonwealth’s burden of proof purports to throw around the defendant. How can anything be put to the jury on this subject without discussing his record or the lack of it?
As the court below stated: “Trial Judges, as in this case, have consequently instructed juries in accordance therewith substantially in the language of the Tilghman case. There the Supreme Court, speaking through Mr. Justice Gibson, had said the Act was aimed at a defendant ‘. . . acquitted of actual crime, but whose conduct may have been reprehensible in some respects, or whose innocence may have been doubtful . . . The judgment is not on the indictment but on something-collateral to it. The defendant is not punished for a matter of which he stood indicted; (for he is acquitted of everything of that sort), though on account of something, of which he was not indicted, some impropriety of conduct, or ground of suspicion, which the verdict of the jury has fastened on him ... I grant, that a statute imposing costs, is penal in its nature . . . There may, I apprehend, be acts, such as certain kinds of fraud, that are offensive to morality, that nevertheless are not indictable . . . Wherever misconduct may be fairly imputed, either to a prosecutor or a defendant, they respectively become obnoxious to this kind of legal animadversion, although neither guilty of, nor technically charged with a crime . . . .”
*317 The fact that Mr. Justice Gibson found that the provision for imposition of costs upon an acquitted defendant “at first view, may appear unjust” and Judge Keller said that it “may appear anomalous”, indicates the .difficulty these eminent judges found in sustaining this provision even without reference to the Fourteenth Amendment. I cannot agree that they would have sustained it today in the light of the Fourteenth Amendment, as interpreted in Lanzetta v. New Jersey, supra, Chester v. Elam, supra, Commonwealth v. Franklin, supra. Under these authorities, this statute, insofar as it authorizes the imposition of costs upon acquitted defendants, clearly violates due process. The order of the court below should be affirmed.