## Commonwealth v. Williams

*Joseph E. Erb*, for Commonwealth.
*Leo E. Gribben, Jr.*, for defendant.

ATKINS, P. J., April 17, 1969.—Here, an indictment charging defendant with a violation of section 402.1 of The Penal Code of June 24, 1939, P. L. 872, added by the Act of July 12, 1968 (no. 159), 18 PS §4402.1, was approved by the grand jury. An application to quash the indictment was filed by defendant, alleging as a sole reason therefor that the act above cited "is invalid being in violation of the due process clause of both the Pennsylvania and the United States Constitution in that it fails to set forth with requisite particularity or definiteness those acts or factors which render him criminally liable."

The language of the statute in question is:

"Section 402.1. Interference with law enforcement or fire fighting personnel or equipment, endangering lives of such personnel or others during riotous or tumultuous conditions.

"Whoever during any riotous or tumultuous condition does any act which interferes with the operation of law enforcement or fire fighting personnel or equipment, or endangers the lives of such personnel or any other person lawfully within the area, is guilty

of a misdemeanor, and upon conviction thereof, shall be sentenced to undergo imprisonment, by separate or solitary confinement at labor, for a term of not more than two (2) years."

Of course, the determination here is limited to whether the language of the statute is so vague and indefinite that by its terms there is no standard by which men of common intelligence can determine what activities will result in the prescribed sanctions. See Chester v. Elam, 408 Pa. 350. A distinction is to be drawn between statutes which purport to penalize utterances printed or spoken because these involve an application of the first amendment. "There we are concerned with the vagueness of the statute 'on its face' because such vagueness may in itself deter constitutionally protected and socially desirable conduct": United States v. National Dairy Products Corp., 372 U.S. 29. Here, the statute before us is concerned particularly with specific conduct under specific circumstances and although it may include written or spoken words, it appears to be more specifically directed toward physical conduct. In order for the statute to apply, the conduct prohibited must occur during riotous or tumultuous conditions.

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; " . . . : Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533. According to Webster's Third International Dictionary, riotous means "of the nature of a riot marked by public uproar and disturbance, participation in a riot." That same work defines tumultuous as "Marked by tumult, tending or disposed to incite a tumult, marked by violence or overwhelming turbulence or upheaval." It seems clear that a person of common intelligence should have no difficulty to understand and recognize riotous and tumultuous conditions.

The acts prohibited under this section are of two types:

(1) Those which interfere with law enforcement or fire fighting personnel or equipment, and

(2) Those which endanger the lives of law enforcement or fire fighting personnel or other persons in the area.

Defendants argue that if this statute be construed to include the use of words as well as physical acts, it is therefore violative of the First Amendment of the Federal Constitution. Reliance is placed on Ashton v. Kentucky, 384 U.S. 195, 16 L. Ed. 2d 469. There, the court held that the common law definition of libel as defined by the State courts in Kentucky violated the first amendment guarantee of free speech. The definition of libel there applied was "any writing calculated to create disturbances of the peace, corrupt the public morals, or lead to any act, which, when done, is indictable." Merely to state this definition is to demonstrate its complete lack of specificity. That obviously is not this case, and as above pointed out the conduct covered by this statute involves conduct other than that of speech.

It is difficult to suggest language that would be clearer than that used short of attempting to enumerate every possible act that may be construed to interfere with law enforcement or fire fighting personnel or be dangerous to the lives of such fire fighting personnel or be dangerous to the lives of such persons or other persons lawfully present. Both the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501, et seq. and the Supreme Court of Pennsylvania require that " 'All laws should receive a sensible construction' and that 'General terms should be so limited in their application so as not to lead to . . . an absurd consequence' ": Commonwealth v. Darcy, 362 Pa. 259. For example their interference with law en-

forcement or fire fighting personnel must be in connection with their duties as such personnel at the time and place of the alleged offense and not an interference with a policeman who happens to be off duty and doing something which has no relation to his duty at the time. We think that no reasonable man would experience difficulty to determine in advance whether his actions at a time of public uproar and disturbance would amount to interference with fire fighting or law enforcement personnel or would constitute a danger to the lives of such persons or other persons lawfully present.

Defendant suggests also that the statute is unconstitutional because it fails to require the prohibited conduct to be done intentionally. There is no prohibition that prevents the legislature from constituting an act a crime, even though the act was done without any criminal intent. In this regard, the following statement of the Supreme Court in Clem's Cafe Liquor License Case, 425 Pa. 94, is appropriate:

"The Legislature, by the exercise of its police power, may deem certain acts, although not ordinarily criminal in themselves, harmful to the public safety, health, morals and general welfare, and absolutely prohibit them, either expressly or impliedly, by omitting all references to such terms as: 'knowingly,' 'willfully,' 'intentionally,' and the like. Such statutes are in the nature of police regulations, and it is well established that the legislature may, for the protection of all the people, punish their violation without regard to the question of guilty knowledge. These regulatory enactments, largely in the nature of police regulations, are generally referred to as *malum prohibitum*, and not requiring guilty knowledge as in the *malum in se* crimes. Although it is difficult, if not impossible, to divide the *malum in se*, or acts wrong in themselves, from the *malum prohibitum*, or those which

are merely prohibited, the courts must interpret the legislative intent."

See also Commonwealth v. Jeremiah Miller, 131 Pa. 118; Commonwealth v. Koczwara, 397 Pa. 575; Commonwealth v. Jackson, 146 Pa. Superior Ct. 328, affirmed 345 Pa. 456. From these citations it appears clear that the question of the legislative intent either to require criminal intent on the part of defendant or not to require it is for the courts to determine through interpretation of the legislative enactment as gathered from the enactment itself under the appropriate rules of statutory construction. It seems to us that for the acts prohibited by the statute under consideration now to be classed as criminal conduct, it is necessary that they be done with criminal intent so that a wholly unintentional act would not constitute a violation of the statute. Since the validity of the statute on its face is the only issue raised by this application, we conclude that the application to quash the indictment must fail.

And now, to wit, April 17, 1969, 10 a. m., it is ordered, adjudged and decreed that the application to quash the indictment found in this case be and is hereby dismissed. An exception is granted to defendant to the action of the court in this regard.