Bernice C. **PHILLIPS**, Joseph P. Egan and Robert T. Kelly, Plaintiffs,

v.

The BOROUGH OF FOLCROFT, PENN-SYLVANIA, Russel T. Wiley, Mayor of the Borough of Folcroft, Pennsylvania, the Borough Council of the Borough of Folcroft, Pennsylvania, Robert Horn, Chief of Police of Folcroft Police Department, and Anthony M. Truscello, Justice of the Peace in the Borough of Folcroft, Pennsylvania.

Civ. A. No. 69–2461.

United States District Court
E. D. Pennsylvania.
Oct. 31, 1969.

Richard, Brian & DiSanti, Jack Brian, Upper Darby, Pa., for plaintiffs.

Edward J. Zetusky, Jr., Chester, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiffs in this case are two candidates running on the Democratic Party ticket for local office in the Borough of Folcroft, Pennsylvania, in an election to be held on November 4, 1969, and Mrs. Phillips, a resident of Folcroft. They seek a preliminary injunction against the further enforcement of Ordinance No. 136 of the Borough of Folcroft directed to the individual defendants who are responsible for such enforcement. Plaintiffs also seek a declaratory judgment, 28 U.S.C.A. §§ 2201, 2202 (Supp. 1969), that the ordinance in question is violative of the due process clause of the Fourteenth Amendment.[1] Plaintiffs filed their complaint on October 21, 1969, and we held a hearing on October 23 and 24 in an effort to expedite a controversy which threatened to become moot after November 4, 1969.[2]

There is no dispute by the defendants that plaintiffs state a claim under the Civil Rights Act, 42 U.S.C.A. § 1983 (Supp.1969). The only attack on our jurisdiction to hear this claim is that plaintiff, Mrs. Phillips, presently appealing in the courts of the Commonwealth her conviction under the ordinance, failed to exhaust state remedies before instituting this action. Such exhaustion is not required. Monroe v. Pape, 365 U.S. 167, 168, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Educ., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); see Dombrowski

1. We will not treat at this time plaintiffs' request for a declaratory judgment. We defer that decision until a final hearing on the merits.

2. There is no question whether to convene a three-judge court where a municipal ordinance, not a "State statute", is attacked as unconstitutional. 28 U.S.C.A. § 2281 (Supp.1969). See Uihlein v. City of St. Paul, 32 F.2d 748 (C.A. 8, 1929), cert. denied, 281 U.S. 726, 50 S.Ct. 240, 74 L.Ed. 1143 (1930); McMillan v. Wagner, 239 F.Supp. 32 (S.D.N.Y., 1964).

v. Pfister, 380 U.S. 479, 486–487, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965).[3]

The basic facts of this case are relatively simple. At about 6:00 p. m. on October 2, 1969, Mrs. Phillips began using a homemade sound broadcast system, attached to her car, in the Delcroft Shopping Center, Folcroft, Pennsylvania, described as "the business center" of Folcroft, and used by Darby residents as well. The subject of the broadcast message, actually a tape recording, was an attack upon the unsanitary condition of the municipal dump used by residents of both Darby and Folcroft; the broadcast urged the closing of the dump and asked listeners to sign a petition directed to Dr. George, a State health official. The condition of the dump is an issue in the local elections, one which has been addressed by the candidates. Mrs. Phillips is not a candidate in those elections.

At about 6:08 p. m., Officer Lorup arrived at the shopping center in response to a radio message concerning a sound truck at the shopping center. Officer Lorup requested Mrs. Phillips to turn down the volume of the broadcasts but she refused. The officer left the scene. At about 6:23 and 6:29, Officer Lorup received two radio calls about the same sound truck. At about 6:30 p. m., he arrived at the shopping center once again, and made another request of Mrs. Phillips to reduce the volume of the broadcasts. When she again refused, he told her of the disorderly conduct ordinance (No. 136) and warned her again to reduce the volume, and, when she refused, arrested her for violating the ordinance.

On October 7, 1969, Mrs. Phillips was convicted of disorderly conduct by Magistrate Truscello and fined $25 plus costs. He warned her that if she appeared before him again on the same charge, he might impose a heavier fine. She raised as a defense in those proceedings the same arguments concerning the ordinance's unconstitutionality as she presents here. Her conviction is presently being appealed to the Court of Common Pleas of Delaware County, Pennsylvania. Plaintiffs specifically exclude any request that we interfere with the pending state proceedings.

Plaintiffs attack the Folcroft Ordinance No. 136 as violative of due process under the Fourteenth Amendment because of vagueness and overbreadth. That Ordinance provides in relevant part as follows:

> "*Section 1:* Disorderly conduct within the limits of the Borough of Folcroft, shall be and is hereby defined as any act, word or conduct causing or tending to cause a disturbance of the peace and good order of the Borough, or causing or tending to cause any danger, discomfort or annoyance to the inhabitants of the Borough or users of the Borough thoroughfares, and shall include * * * the making of loud and/or unnecessary noises * * *."[4]

Plaintiffs challenge this municipal ordinance as unconstitutional "on its face",[5] by which we understand them to mean that its application to sound trucks "* * * would be unconstitutional in some possible applications as construed, even though, were [the ordinance] limited in applicability to the circumstances of this case, it would be constitutional. * * *" Amsterdam, *The Void-For-Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67, 109 n. 224 (1960) (hereinafter cited as "*Amsterdam*"). See Thornhill v. Alabama, 310 U.S. 88, 96–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

3. Nor is the abstention doctrine appropriate. Dombrowski v. Pfister, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965).

4. This ordinance was promulgated under the authority of 53 Pa.Stat.Ann. § 46202 (20) (Supp.1969).

5. It is clear that the plaintiffs possess standing to raise the constitutional issues here presented. N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

We need not consider plaintiffs' contention that she has been denied the equal protection of the laws by discriminatory application of the ordinance. Her specific abjuration of injunctive relief against her conviction under the ordinance obviates the need for evaluation of her argument that the ordinance has been applied in a bad faith manner. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, plaintiffs have adduced some evidence of discriminatory application of the ordinance, including the following testimony, which is largely uncontradicted: during the general election of 1968, a panel-truck with large and expensive "professional" sound equipment was used at a Republican Party "rally" at the Delcroft Shopping Center attended by the present Borough Council President, Mr. Bowe, State Senator Bell, and Magistrate Truscello. A year earlier, Mrs. Phillips and her husband were arrested under Odinance No. 136 by Police Chief Myers when Mrs. Phillips, then a candidate for state-wide office, attempted to use home-made sound equipment similar to that involved in the instant case in aid of her campaign within the Borough of Folcroft. These facts are complicated by the rather bizarre misunderstanding on the part of nearly all the Borough officials and political party officers that the Mayor of the Borough was vested with discretion to issue permits for the use of sound trucks, a misconception not corrected until this suit was filed and the Borough Solicitor, to his admitted surprise, was unable to find any ordinance granting such power. Thus, there was testimony that, in the past, permits for the use of sound trucks had been granted to those persons in power, to wit, Republicans, and that at a Borough Council meeting on September 8, 1969, the Mayor forbad the use of sound trucks by *any* candidate for election, regardless of political affiliation.

Further, there was testimony that social clubs and carnival sponsors had been permitted to use sound trucks within the last year for the advertisement of their respective functions. Mr. Young, a Folcroft resident, testified, without contradiction, that two blocks from his home there existed a community swimming pool which employed a public address system clearly audible at his home, some one hundred yards away, a substantially greater distance than the one hundred and fifty to two hundred feet that Mrs. Phillips' system carried at the Delcroft Shopping Center.

This evidence, tending to show uneven application of the ordinance, illustrates the potential for the arbitrary exercise of the police power which is latent in the ordinance. It is therefore of some assistance in deciding the issue of vagueness. *See* Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Amsterdam at 113; *see also* Herndon v. Lowry, 301 U.S. 242, 261–264, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).

Plaintiffs Kelly and Egan testified that they desired to utilize sound trucks in their efforts to gain election to the position of member of the School Board and Borough Auditor respectively, since sound trucks are the "quickest, cheapest, most effective way" available to them. We think that these facts sufficiently state irreparable harm justifying equitable relief should the plaintiffs succeed on the merits.

Turning to the ordinance itself, the proscribed "disorderly" conduct is "* * * the making of loud and/or unnecessary noises * * *." In their testimony before us, the Borough's law enforcement officials indicated that this was the phrase under which they had proceeded against Mrs. Phillips, and Magistrate Truscello testified that he referred to that language in deciding to convict her of disorderly conduct. In deciding the issues before us, we begin with the proposition that

> "[t]he objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled

delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. * * *" N. A. A. C. P. v. Button, 371 U.S. 415, 433–434, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). And in the area of First Amendment rights, we are concerned with freedoms that are "delicate and vulnerable, as well as supremely precious in our society." N. A. A. C. P. v. Button, *supra*, 371 U.S. at 433, 83 S.Ct. at 338. And, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Id.* Thus, while the candidates for local office expressed themselves to be deterred from using sound trucks, in part due to Magistrate Truscello's warning to Mrs. Phillips of a heavier fine should she reappear before him on the same charge, we need only observe that "[t]he threat of sanctions may deter [the exercise of First Amendment rights] almost as potently as the actual application of sanctions." N. A. A. C. P. v. Button, *supra*, 371 U.S. at 433, 83 S.Ct. at 388

■ The "chilling effect" which a vague and overbroad ordinance can have on the exercise of free speech in the crucial area of an election can not be minimized by resort to the maxim that, in order to be vague, "men of common intelligence must necessarily guess as to [the ordinance's] meaning." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939); City of Chester v. Elam, 408 Pa. 350, 356, 184 A.2d 257 (1962). Defendants assert that the Supreme Court of the United States has upheld their position in Kovacs v. Cooper, 336 U.S. 77, 79, 69 S.Ct. 448, 450, 93 L.Ed. 513 (1949), when, against an attack based on vagueness, the Court upheld a municipal ordinance prohibiting sound amplifying equipment which emitted "loud and raucous" noises, saying that those words "have through daily use acquired a content that conveys to any interested person a sufficiently

accurate concept of what is forbidden." We can agree with that judgment, but find no such saving accuracy in the ordinance before us.

At the outset we observe that the defining adjectives contained in Folcroft Ordinance No. 136 are used in the disjunctive. Thus, a person can be convicted of disorderly conduct for making only "loud noises" It is worth noticing that the Supreme Court has accorded First Amendment protection to a public demonstration characterized by "boisterous", "loud," and "flamboyant" conduct. Edwards v. South Carolina, 372 U.S. 229, 233, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) (overturning convictions of demonstrators for common-law breach of the peace). It could be argued that Ordinance 136's use of the adjective "loud" to define disorderly conduct, without any further modification of "noise", is itself sufficiently imprecise not to withstand constitutional scrutiny. The death knell is sounded, however, by the use of "unnecessary", in the disjunctive, to modify "noise."

We do not think it requires much discussion to establish the vice, in the area of First Amendment freedoms, of defining disorderly conduct to mean "the making of unnecessary noises." The definition of proscribed conduct in this manner permits

"so much free play that in the practical course of [the ordinance's] operation it is likely to function erratically —responsive to whim or discrimination unrelated to any specific determination of need by the responsible policy-making organs of society—and to result in a significant number of impermissible public-versus-private-interest resolutions which are beyond the effective discovery or appraisal of the Court." *Amsterdam* at 90.

■ First, it is clear that the phrase "unnecessary noises" denotes a source of sound which the hearer considers either unimportant or nonessential to some operation, *e. g.*, use of an automobile. This interpretation is perilously close to Ordi-

nance No. 304 of the Township of Darby which we today have held violative of due process for overbreadth. Phillips v. Township of Darby, 305 F.Supp. 763 (E.D.Pa., filed October 31, 1969). Thus, to the extent that Ordinance No. 136 of the Borough of Folcroft precludes the use of sound trucks because other means of reaching the town's voters are available, it renders a judgment inconsistent with the First Amendment. *See,* Kovacs v. Cooper, 336 U.S. 77, 81–82, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

■ However, as we have indicated, the real vice of this language is that it permits police and other officials to wield apparently unlimited discretionary powers in choosing those persons in violation of the ordinance.[6] *See* Landry v. Daley, 280 F.Supp. 938, 951–952 (N.D. Ill., 1968). It would have been possible under a different reading of the ordinance for a police officer to have decided to arrest Mrs. Phillips after concluding that it was not necessary to have a noncandidate such as Mrs. Phillips use a sound truck, which made a lot of noise, to speak about election issues—that it was only "necessary" to have political candidates make noise about such issues. This is clearly an impermissible judgment under the First Amendment.

In an effort to save the ordinance, the defendants refer us to Chester Branch N. A. A. C. P. v. City of Chester, 253 F. Supp. 707 (E.D.Pa., 1966). In that case, Judge Luongo was faced with an attack upon a municipal ordinance which restricted the volume of the sound emitted from sound trucks to that which permitted the sound to be audible at no more than one hundred feet from the sound amplifying equipment. Judge Luongo quite properly found the ordinance a successful effort by the city to follow the suggestion of the Supreme Court in Saia v. New York, 334 U.S. 558, 560, 68 S.Ct.

1148, 92 L.Ed. 1574 (1948), that municipal ordinances restricting the use of sound equipment be narrowly drawn "to regulate the hours or places of use of loudspeakers [and] the volume of sound (the decibels) to which they must be adjusted." See 253 F.Supp. at 714. When compared with the ordinance at issue before us, the suggestion of *Saia* so taken to heart by the City of Chester appears to have been a voice crying in the wilderness as far as the drafters of Folcroft Ordinance No. 136 were concerned.

### RELIEF

■ There can be no dispute that since we have concluded that Ordinance No. 136 of the Borough of Folcroft is void on its face the plaintiffs are entitled to a preliminary injunction restraining the defendants from enforcing it. Hague v. CIO, 307 U.S. 496, 518, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *see* N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). This is not to say that the Borough of Folcroft cannot draft an ordinance treating the use, or abuse of sound trucks and sound amplifying equipment. Our companion opinion in Phillips v. Township of Darby, 305 F.Supp. 763 (E.D.Pa., filed October 31, 1969), recognizes a legitimate interest in their regulation. Our decision here is addressed to the *form* such regulation takes, not its "ultimate amenability to regulation." *Amsterdam* at 113. In light of the foregoing discussion and conclusions, it seems likely, if not inevitable, that plaintiffs will prevail on final hearing, and that they will suffer irreparable injury if a preliminary injunction does not issue.

The foregoing shall be deemed our Findings of Fact and Conclusions of Law. We have already entered on October 30, 1969 an Order in accordance with this Opinion.

---

6. The fact that the arresting officer gave Mrs. Phillips one warning to reduce the volume of the sound truck, returned several minutes later and warned her again before arresting her pursuant to Ordinance No. 136, adds nothing of constitutional dimension to the issue before us. Such "notice" of violation of the ordinance does not cure unconstitutional vagueness. Wright v. Georgia, 373 U.S. 284, 292–293, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963).