U. S. LABOR PARTY, Michael Thomas Maddi, Steven W. Cook, Belinda Frances DeGracia, Pamela Solomon, Carlton Orlando Braxton, Glen Nesaros, Stewart Rosenblatt, John Ascher, Jeanine Roslyn Schoonick, William Salisbury, Larry Freeman and Mary Primack, Appellants,

v.

Donald E. POMERLEAU, Police Commissioner of Baltimore City, William Donald Schaefer, Mayor of Baltimore City, John B. DeHoff, Commissioner of Health, Health Department of Baltimore City, Frank M. Hoot, Assistant Commissioner of Health, Environmental Health Department of Baltimore City, and David T. Lewis, Director, Bureau of Noise Control, Appellees.

No. 76–1780.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1977.

Decided June 28, 1977.

William Harris Zinman, Baltimore, Md., for appellants.

J. Warren Eberhardt, Asst. City Sol., Baltimore, Md. (Benjamin L. Brown, City Sol., Ambrose T. Hartman, Deputy City Sol., Baltimore, Md., on brief), for appellees.

Before WINTER, CRAVEN * and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The United States Labor Party and several of its members appeal the judgment of the district court denying a declaratory judgment and injunctive relief against the enforcement of Baltimore's noise control ordinance. They contend that the ordinance, as applied to the amplification of political speech on the public streets, violates the first and fourteenth amendments. We reverse the judgment of the district court.

Members of the United States Labor Party, a political organization, used amplifiers to conduct political rallies on the public streets of Baltimore. At these rallies, party members campaigned for political candidates, recruited members, and expressed the organization's goals. They also circu-

lated petitions, distributed literature, and sold publications. They claim that the streets were the only forum available to them because of the party's lack of funds.

The Bureau of Noise Control warned party members that their amplifiers exceeded the sound level permitted by Ordinance No. 108.[1] This ordinance was enacted to eliminate unnecessary noise throughout the city of Baltimore. It establishes maximum sound levels permissible in residential, commercial, and industrial zones. Each level is defined as a specific number of decibels "at any point on the property line of the use."

The Director of the Bureau of Noise Control testified that following a complaint about a violation, his department measured the noise in decibels with a sound level meter. He acknowledged that the number of decibels depends in part on how far from the source of the sound the measurement is taken. For example, at a distance of three feet, a person speaking slightly louder than normal would exceed the sound level permitted in residential areas. He added, however, that noises associated with residential living are not considered violations.

The Director stated that the Bureau generally measured sound levels along the property line of the use. But he explained that most readings in the downtown commercial zone were taken on the sidewalks, adjacent street corners, and areas from which complaints had been received. He said that measurements were taken from these locations for two reasons: "(1) the difficulty in determining the property lines in the downtown area, (2) more importantly, the people using the streets and sidewalks were most likely subjected to and affected by the noise and were the ones making the complaints." He therefore directed his staff to take readings from posi-

---

* Judge Craven concurred in the panel's decision to reverse the judgment of the district court, but he died before this opinion was prepared.

1. Because of the use of amplifiers, members of the United States Labor Party have been charged with disorderly conduct and noise control ordinance violations, but all charges except for a disorderly conduct conviction have been dismissed. The Bureau of Noise Control maintains that party members would be liable for violation of the noise control ordinance if they continue to use amplifiers which exceed the maximum permissible sound level as measured by the Bureau's investigators.

tions where people would be exposed to the noise:

Q [S]o what would govern would not be the property line of the use, but where the people were complaining?

A Where people would be insulted by the noise.

Q And if they were three feet away it would be three feet, and if they were six feet away it would be six feet, right?

A It's according to the man who is measuring it.

Employees from the Bureau of Noise Control testified that they had investigated a number of complaints about amplifiers used by the United States Labor Party in commercial areas. They estimated that on various occasions they had measured the sound level of the amplifiers at distances ranging from 4½ feet to 57 feet. They determined where to take the measurements on the following basis:

Q On some occasions you took readings where people were, right?

A In some instances.

Q On other instances you took readings where you anticipated where people would be, is that correct?

A At times.

Q All right. Now is there any other way that you determined where you would position yourself other than determining A, where people were, or B, where you anticipated people would be?

A Well, at times we have gone to' opposite corners [of an intersection] if there was—if the loudspeaker was set on a corner we have gone on the opposite corner or to an adjacent corner. Each time it would have to be evaluated.

The Supreme Court considered the first amendment right to amplify speech in *Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948), and *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). In these cases, the Court noted that loudspeakers are indispensable instruments of effective communication. Consequently,

restrictions on volume must be no greater than necessary to prevent disturbance from loud and raucous noise. The Court furthermore cautioned that adequate guidelines must govern the enforcement of the statute lest "annoyance at ideas . . . be cloaked in annoyance at sound." 334 U.S. at 562, 68 S.Ct. at 1151.

■ *Saia* and *Kovacs* establish that anti-noise ordinances must meet the strict tests of vagueness and overbreadth applicable to the regulation of speech. The principal vice of a vague or overbroad ordinance regulating street sounds is its deterrence of constitutionally protected speech. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 114, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Amsterdam, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L. Rev. 67 (1960). Tested by the due process clause as applied to restrictions on speech, an ordinance is void for vagueness unless it provides fair warning of prohibited conduct and explicit standards for enforcement. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620–22, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). To withstand an overbreadth challenge based on first amendment rights, an ordinance must be narrowly drawn to serve compelling needs of society. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–15, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

■ Baltimore's ordinance, as applied to the amplification of political speech on a public street, does not meet these tests. The evidence discloses that in commercial areas the Bureau of Noise Control cannot follow the ordinance's directive to measure decibels on "the property line of the use." Instead, its investigators measure volume from points where they have observed pedestrians or expect them to be. The speaker is thus penalized unless he correctly guesses where the investigator will take a measurement. Because a violation depends on the subjective opinion of the investigator, the speaker has no protection against arbitrary enforcement of the ordinance. *Compare Phillips v. Borough of Folcroft*,

305 F.Supp. 766, 769–71 (E.D.Pa.1969), *with Chester Branch N.A.A.C.P. v. City of Chester*, 253 F.Supp. 707, 714 (E.D.Pa.1966).

Moreover, the ordinance curtails the amplification of political expression solely because the number of decibels, as measured within a few feet of the speaker, exceeds the permissible sound level. Applied in this manner, the ordinance prohibits amplification that creates no more noise than a person speaking slightly louder than normal. The city has no legitimate interest in banning amplified political messages which do not exceed the sounds encountered daily in the most tranquil community. *See Maldonado v. County of Monterey*, 330 F.Supp. 1282, 1286 (N.D.Cal.1971); *Phillips v. Township of Darby*, 305 F.Supp. 763, 765 (E.D.Pa. 1969).

We therefore hold that the ordinance, as applied to the amplification of political speech in the public streets, is vague and overbroad in violation of the first and fourteenth amendments. An appropriate injunction against its enforcement should be granted.

*Reversed and remanded.*