JIM CROCKETT PROMOTIONS, INC., a North Carolina corporation, and Charlotte Sports Promotions, Inc., a North Carolina corporation, Plaintiffs,

v.

The CITY OF CHARLOTTE, a municipal corporation; O. Wendell White, as City Manager of the City of Charlotte; and Mack M. Vines, as Chief of Police of the City of Charlotte, Defendants.

No. C–C–81–437–M.

United States District Court,
W. D. North Carolina,
Charlotte Division.

May 19, 1982.

John A. Mraz and Richard D. Boner, Mraz & Michael, P.A., Charlotte, N.C., for plaintiffs.

Durant W. Escott, Asst. City Atty., Charlotte, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

### I.

The plaintiff Jim Crockett Promotions, Inc. ("Crockett") owns Crockett Park, a private stadium in Charlotte, North Carolina, used for sporting events and other types of entertainment. Charlotte Sports Promotions, Inc. ("CSP") leases the park from Crockett for such events. Plaintiffs filed this suit against the City of Charlotte, its City Manager and its Chief of Police to restrain enforcement of the City's noise ordinance and to procure other relief. Plaintiffs allege that enforcement of the order will violate their rights under Amendments One, Five and Fourteen to the United States Constitution. Hearings were conducted on November 23, 1981, and February 16, 1982.

The ordinance challenged is in Chapter 13, Article III, of the Charlotte City Code. It was enacted by the City Council on December 22, 1980. Section 13–52 of that ordinance states:

It shall be unlawful for any person to create, assist in creating, permit, continue or permit the continuance of any *unreasonably* loud, disturbing *or unnecessary* noise in the city. [Emphasis added.]

Section 13–53.1(5), adopted as an amendment on May 11, 1981, adds further restraint as to private parks and stadiums:

(a) The use of sound-amplifying equipment in a private park or stadium shall not exceed the L10 sound level equal to sixty (60) dB(A) between the hours of 7:00 a. m. and 11:00 p. m. as measured at any point within the nearest residential property.

(b) The use of sound-amplifying equipment in a private park or stadium shall not exceed the L10 sound level equaled to fifty (50) dB(A) between the hours of 11:00 p. m. and 7:00 a. m. of the following day as measured at any point within the nearest residential property.

The L10 level is defined in § 13–53.1(1)(f) as

The A-weighted sound level that is exceeded ten (10) per cent of the time in any measurement period.

The A-weighting scale is defined in § 13–53.1(1) as

The sound pressure level in decibels as measured with the sound level meter using the A-weighted network (scale). The standard unit notation is dB(a) [decibels].

Proof of a meter reading that exceeds the City standard is not necessary to a finding that the ordinance has been violated in all cases. Section 13–55.1 states:

The *complaints of three (3) or more* persons, each of whom resides in a different home from the other complaining person or persons, *or the complaint of one (1) or more persons, when combined with the complaint of a police officer*, a noise control officer, or an animal control officer *shall be prima facie evidence* that such sound is a loud, annoying, frightening, disturbing, unreasonably loud or unnecessary noise. This presumption shall apply to any provision under this article and shall also apply to subsection 3–5(f) of this Code, pertaining to noise from barking dogs and other animals. (Ord. No. 861, § 1, 12–22–80) [Emphasis added.]

Section 13–53.2(b)(1) *permits* motor vehicle noise in excess of *eighty* decibels for vehicles traveling at a speed of 35 m.p.h., the speed limit in many residential neighborhoods. Other sounds, far in excess of sixty decibels, are permitted under the ordinance.

Section 13–55.3 provides civil and criminal penalties as follows:

(a) *Criminal penalties.* Any person who causes, permits or allows any violation of any of the provisions of this article shall be deemed guilty of a misdemeanor punishable by imprisonment not to exceed thirty (30) days or a fine not to exceed fifty dollars ($50.00). Each day of a continuing violation shall constitute a separate violation.

(b) *Civil penalty.* Any person who causes, permits or allows any violation of any of the provisions of this article shall be subject to a civil penalty of not more than five hundred dollars ($500.00). No civil penalty shall be assessed until the person that is alleged to be in violation has been notified of the violation. Each day of a continuing violation shall constitute a separate violation.

■ The First Amendment protects speech of all kinds—commercial, religious and political. A citizen may not be required to prove that he or she has a right to speak; the burden is and should be on the prosecution to establish that a particular exercise of speech is not protected by the First Amendment. Government can restrict protected speech only if it can show that the challenged speech violates or threatens an established and substantial public need.

■ In *Schad v. Mt. Ephriam*, 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981), the Supreme Court affirmed the principle that:

Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee.

Under the *Schad* decision, whenever a challenged ordinance or regulation infringes upon "political" or "commercial" speech, the court is expected to examine the government's interests which underlie the regulation, and the means adopted to protect that interest. *Id.* at 71, 101 S.Ct. at 2184. *Reasonable* regulations governing the time, place and manner of First Amendment activity may further government interests with only limited restraint on the right to free speech, *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). However, even if the interest is substantial, a regulation is invalid if vague or overbroad, or if it contains unlawful procedural burdens.

Plaintiffs contend (1) that the ordinance is an unreasonable and unconstitutional infringement of political or commercial speech; (2) that it is unconstitutionally vague; and (3) that it places an illegal burden of proof upon the criminal defendant.

## II.

Serious doubts exist as to the reasonableness of the regulation and as to whether it is a constitutional discrimination among various types of sound. The ordinance permits motor vehicles to operate at levels

above 80 decibels, which is many times the intensity of the 60 decibels of amplified sound prohibited for rock and roll music. It may well be that upon the trial of the issue, the basic requirements of the ordinance will be found unreasonable and arbitrary and so discriminatory that they do not pass constitutional muster. However, in view of the other defects of the ordinance, it is not necessary to decide the question of its basic reasonableness in this proceeding.

### III.

█ The ordinance is void for vagueness. Under the ordinance, a violation occurs if amplified sound exceeds the prescribed decibel level for 10 per cent of "any measurement period." No duration of "measurement period" is prescribed. Plaintiffs can not learn from the ordinance how long a "measurement period" a particular law enforcement officer might think appropriate at any given time. The absence of a clear definition for the measurement period makes it impossible to predict whether a particular performance will or will not violate the ordinance. The burden of predicting what time period is going to be used to attain a legal reading of the noise level may not be thrown upon the party who is exercising protected First Amendment rights. In *United States Labor Party v. Pomerleau*, 557 F.2d 410, 412 (4th Cir. 1977), the Court said:

> [A]n ordinance is void for vagueness unless it provides fair warning of prohibited conduct and explicit standards for enforcement.

The ordinance is also vague because it prohibits "unnecessary" noise, without setting a standard for defining what is necessary. A law is vague if "men of common intelligence must necessarily guess at its meaning," *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976).

### IV.

█ The law places an unconstitutional burden upon the defendant to prove freedom from guilt. As applied to sound ampli-

fication equipment, the prohibition of § 13–53.1(5)(a) and (b) is expressed in decibels. In spite of that seemingly objective standard, § 13–55.1 allows the prosecution to make out a *prima facie* case simply upon the "complaints" of three or more private persons or the complaint of one person plus a law enforcement officer. Section 13–55.1 also defines such "prima facie evidence" as creating a "presumption" of guilt. The effect of these provisions is to put the burden of proof upon the defendant whenever "complaints" are made by the necessary numbers of people. This appears to violate the established law of the land that guilt in criminal cases must be proved by the prosecution beyond a reasonable doubt.

### CONCLUSION

It is the conclusion of this court, therefore, without making any judgment as to the intrinsic reasonableness of the ordinance, that plaintiffs have fully demonstrated that the ordinance is vague and places unconstitutional burdens upon the criminal defendant, and that it is, therefore, invalid, and that plaintiffs are entitled to the equitable relief they seek.

IT IS, THEREFORE, ORDERED:

1. That the defendants' motion to dismiss is denied.

2. That the plaintiffs' motion for a preliminary injunction against the enforcement of §§ 13–53.1 and 13–55.1 is granted. Defendants are enjoined not to enforce the ordinance pending further orders of this court.

3. That all other motions are denied pending a trial on the merits.