JIM CROCKETT PROMOTION, INC., a North Carolina corporation, and Charlotte Sports Promotions, Inc., a North Carolina corporation, Appellees,

v.

The CITY OF CHARLOTTE, a municipal corporation; O. Wendell White, as City Manager of the City of Charlotte, and Mack M. Vines, as Chief of Police of the City of Charlotte, Appellants.

No. 82–1554.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1983.

Decided May 4, 1983.

Durant W. Escott, Charlotte, N.C., Office of The City Atty., for appellant.

Richard D. Boner, Lexington, N.C. (John A. Mraz, Mraz, Michael & Boner, P.A., Charlotte, N.C.), for appellees.

Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is an appeal from a grant of a preliminary injunction against the enforcement of certain specific sections of the Charlotte, (North Carolina) Noise Ordinance.[1] In so doing, the District Court found two sections (§§ 13–53.1 and 13–52) of the Ordinance facially unconstitutional for vagueness and a third (§ 13–55.1) unconstitutional because it "place[d] an unconstitutional burden upon the defendant to prove freedom from guilt." The defendant City of Charlotte and its individual officers have appealed. We affirm in part and reverse in part, 538 F.Supp. 1197.

I

The plaintiffs are the owners and the operators of a private "general purpose sports and entertainment stadium" located in the City of Charlotte, where "professional baseball games ... attended by members of the public" have been customarily held and where "blue grass and other types of musical concerts" have been performed. In connection with all these events, the plaintiffs have long made use of sound-amplifying equipment in order "to provide information to the persons in attendance at the [baseball] games" and to magnify the sound of the musical concerts.

1. Chapter 13, Article III, Charlotte City Code.

In 1980, the Council of the City of Charlotte, enacted a noise ordinance which, among other things, regulated the use of sound-amplifying equipment in private parks. This ordinance, the plaintiffs allege, violates the equal protection, due process and free speech provisions of the First, Fifth and Fourteenth Amendments to the Constitution of the United States and, if such ordinance is enforced, the plaintiffs allege they will suffer irreparable injury since they will be unable to continue to lease their park for sporting or musical events. To prevent this injury, they sought a declaratory judgment and both preliminary and permanent injunctive relief.

The power of the defendant, City of Charlotte, under State law to adopt a noise ordinance is conferred by § 160A–184, N.C. G.S. The City first exercised that power in 1946, with the adoption of a general prohibitory ordinance, which forbade "any unreasonably loud, disturbing, or unnecessary noise in the city." Various amendments and additions were thereafter made. In 1978, however, the Congress enacted the Quiet Communities Act of 1978, 42 U.S.C. § 4913. Under this Act, the Environmental Protection Agency was directed, among other things, to provide assistance to State and local governments in the "preparation of model State or local legislation for noise control." § 4913(f), 42 U.S.C. Obedient to that mandate, the Agency, in conjunction with the National Institute of Municipal Officers, prepared a Model Community Noise Control Ordinance. This Model contained "definitive performance standards," and, with an increase "in reliable monitoring equipment . . ., coupled with [these] definitive standards. . ., should result in ordinances which [were] more easily enforceable than many have been in the past." In the Model, the term "sound" was generally used rather than the older term "noise" since, with the new measurement equipment, and with "objective criteria" for prohibited "sound" "proof of an additional subjective element [was] unnecessary." The EPA [Environmental Protection Agency] in the Model did not attempt to set forth specific sound levels since, in its opinion

"there is no single number that can be chosen for each provision that would be appropriate for all types of communities." The EPA did attach as an appendix to the Model a graph depicting the decibel standards for various forms of sound adopted by the various communities of the nation which at the time had adopted anti-noise ordinances. The Model recognized, though, "that certain acts [might] be prohibited by more than one provision" of the Model.

The Charlotte Council, after consultation with the EPA, adopted in 1980 the amended noise ordinance which is the subject of this proceeding. This Ordinance followed broadly the Model Ordinance drafted by that Agency in conjunction with the National Institute of Municipal Officers. In this new Ordinance, the Council retained the general prohibition included in the original 1946 ordinance against any "unreasonably loud, disturbing or unnecessary noise in the city." Section 13.52. It added a substantial number of additional provisions, the only one of which is involved in this appeal is Section 13–53.1 regulating the "use of sound-amplifying equipment." In this latter Section, sound volume caused by amplifying equipment was prohibited beyond certain levels, measured in decibels, in particular areas at specified hours of the day. Sound volume, under this Section was to be "determined by the use of a sound level meter whose characteristics and frequency weightings are specified in ANSI standards," as set forth in "American National Standards Institute, Publication ANSI, S1.4–1971" Section 13–53.1(1)(b) and (c). The Section provided an exception or relief provision under which if the sound level did not exceed the stated limits for more than "ten (10) per cent of the time in any measurement period," such amplification would not be considered a violation of the Section. Section 13–53.1(1)(f). Finally, the Ordinance included a presumption provision applicable to any prohibitions in the Ordinance. Section 13–55.1. This presumption was as follows:

"The complaints of three (3) or more persons, each of whom resides in a differ-

ent home from the other complaining person or persons, or the complaint of one (1) or more persons, when combined with the complaint of a police officer, a noise control officer, or an animal control officer shall be prima facie evidence that such sound is a loud, annoying, frightening, disturbing, unreasonably loud or unnecessary noise."

The District Court found that, so much of 13–52 of the Ordinance as prohibited "unnecessary" noise, and such part of the sound-amplifying Section as granted exemption where the sound volume did not exceed a certain percentage of "sound level" in "any measurement period," was unconstitutionally vague, and that the presumption section violated due process. It granted, either directly or implicitly, injunctive relief against the enforcement of these Sections.[2] The plaintiffs had raised other grounds which they contended rendered the Ordinance, either in whole or in part, unconstitutional but the District Court did not rule on them nor do we.

## II

We have no difficulty in affirming the District Court in its holding that the term "unnecessary" in the general prohibitory language of the Ordinance is unconstitutionally vague. But the mere finding that the term "unnecessary" in this section of the Ordinance is unconstitutionally vague is an insufficient basis for invalidating the other provisions of this general prohibitory section, particularly since the other terms define the prohibited conduct in terms which have been found invulnerable

from attack for vagueness.[3] This is so, because, as stated by the Supreme Court in *United States v. Jackson,* 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968), quoting from *Champlin Refining Co. v. Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932), "[t]he unconstitutionality of a part of an Act does not necessarily defeat . . . the validity of its remaining provisions. Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.'" The only circumstance in which this rule is not to be applied is where "the invalid provisions are deemed so essential, and are so interwoven with others, that it cannot reasonably be presumed that the legislature intended the statute to operate otherwise than as a whole." *Moore v. Fowinkle,* 512 F.2d 629, 632 (6th Cir.1975). Such circumstance is not present here. The several classes of proscribed conduct in the challenged section are stated not as dependent terms but as separate and distinct types of proscribed conduct. This is obvious in the use of "or" in the identification of the separate types of conduct which were prohibited by the section. Consequently, the excision of "unnecessary" from section 13–52 does not prevent the remainder of such section from "being fully operative as law," embracing as valid the conduct identified in the other terms of that section. *See, Griffin v. State Board of Education,* 296 F.Supp. 1178 at 1182 (E.D.Va. 3-judge ct.); *cf. McCorkle v. United States,* 559 F.2d 1258, 1260 (4th Cir.)

2. The District Court did not enjoin the enforcement of Section 13–52 of the Ordinance, which declares unlawful "the continuance of any unreasonably loud, disturbing or unnecessary noise in the City." Yet it declared in the body of its order that the Ordinance was "also vague because it prohibits 'unnecessary' noise, without setting a standard for defining what is necessary." And in the ordering part of its Order, it stated that the "[d]efendants are enjoined not to enforce the ordinance pending further orders of this court." We would assume from this that the District Court intended to enjoin the enforcement of Section 13–52, for, if it did not, there would have been no authori-

ty to enjoin completely the enforcement of this entire Section of the Ordinance.

3. The term "unreasonably loud" was found not to be unconstitutionally vague in an ordinance similar to the one involved here in *Kovacs v. Cooper,* 336 U.S. 77 at 89, 69 S.Ct. 448 at 454, 93 L.Ed. 513 (1949) and in *Reeves v. McConn,* 631 F.2d 377, 382 (5th Cir.1980); and similarly, "disturbing" was held not to be unconstitutionally vague in *Grayned v. City of Rockford,* 408 U.S. 104, at 112, 92 S.Ct. 2294, at 2301, 33 L.Ed.2d 222 (1972) and in *Reeves v. McConn, supra,* 631 F.2d at 382.

*cert. denied,* 434 U.S. 1011, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978).

It follows that, while we affirm the District Court's finding that the term "unnecessary" was unconstitutionally vague, we invalidate the injunction granted by the District Court so far as it may be construed as authorizing an injunction against the enforcement of that part of Section 13–52 of the Ordinance which prohibits "unreasonably loud, disturbing .. noise."

### III

■ Secondly, the District Court found unconstitutional the "presumption" language of section 13–55–1 of the Ordinance. This section declares that the "complaint" of three residents of separate homes or apartments, combined with the "complaint" of a police officer, shall be *prima facie* evidence of a violation of the Ordinance. Though they do not cite *Ulster County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), in which mandatory and permissive presumption are authoritatively discussed, the appellants seem to argue that this provision, characterized in the Ordinance itself as a "presumption," is to be distinguished from the class of "mandatory presumptions" which are plainly invalid, and falls within the definition of a "permissive presumption" or inference which may not be held facially unconstitutional *per se* as stated in that case. *Id.* at 162–63, 99 S.Ct. at 2227–28.[4]

This argument requires some inquiry into the difference between "mandatory" and "permissive" presumptions as declared in *Ulster County.* A permissive inference or presumption is defined in *Ulster County* as one which "may constitute prima facie evidence of the elemental fact" in issue, but "which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Id.* at 157, 99 S.Ct. at

2224. The Court held, on the other hand, that a mandatory presumption "tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *Id.* at 157, 99 S.Ct. at 2225. But the Court proceeded to qualify its definition of a mandatory presumption with this language: "[t]o the extent that a presumption imposes an extremely low burden of production—*e.g.,* being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." *Id.* at 158, n. 16, 99 S.Ct. at 2225, n. 16. The defendants, naturally rely on this qualification for their argument that, even if the presumption in this case be construed as one which shifts the burden of production, the burden so imposed is so low that the presumption should be treated under *Ulster County* as a permissive presumption. It is unnecessary, however, to resolve the question whether the presumption in this case is to be analyzed as a "permissive" or a "mandatory" presumption, since, even if the presumption in this case be thought to be "permissive" the section challenged is invalid.

An essential element of a "permissive" inference or presumption under the due process clause is the requirement that there be a "rational" connection between the fact proved and the inference or presumption drawn from such fact, *Id.* at 157, 99 S.Ct. at 2224–25, or, as Justice Powell rephrases it in his dissent in *Ulster County,* the inference or presumption must "reflect some valid general observation about the natural connection between events as they occur in our society," *Id.* at 170, 99 S.Ct. at 2231, or, again, as the Court in *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943) put it, "reason and experience [must] support the inference [or presumption]." Neither general experience

4. The Court says:

"Our cases considering the validity of permissive statutory presumptions such as the one involved here have rested on an evaluation of the presumption as applied to the record before the Court. None suggests that a court should pass on the constitutionality of this kind of statute 'on its face.' "

nor reason or common sense, however, suggests that merely because three persons plus a police officer complain (*not testify, merely complain*) that certain noise was "loud" or "disturbing" warrants an inference or presumption by a jury that their untested complaints amount to "prima facie evidence" that the noise was "loud" or "disturbing". A "complaint" is no more than a charge, made *ex parte,* without any opportunity by a defendant to confront the person making the "complaint" or giving the "information" or to test by cross-examination the validity of such "complaint." At best, it could have no greater stature than an arrest warrant or perhaps an indictment, both of which proceed *ex parte.* Neither the arrest warrant nor the indictment has such standing as to support *prima facie* evidence or presumption of guilt to impose on a defendant the burden either of persuasion or production. Similarly, we do not think "complaints," whether from one or four complainants, can be deemed *prima facie* evidence of wrongful conduct or be given the stature of a presumption imposing any burden of either persuasion or of proof on a defendant. It follows that the presumption in this case, even if it can properly be considered "permissive" in character, is so lacking in rationality that it may not be applied under established principles of due process.

## V

The third provision of the Ordinance found unconstitutional is the "relief" or exemption provision of the sound amplifying Section 13–53.1. This "relief" provision exempted from the regulatory prohibition any sound-amplified sound originating in a private park which did not exceed "ten (10) per cent of the time in any measurement period." Section 13–53.1(f). The District Court found this provision to be unconstitutionally vague in that it did not prescribe the "duration of 'measurement period'." Such failure, the District Court held, made it impossible for a person to know "from the ordinance how long a 'measurement period' a particular law enforcement officer might think appropriate at any time." The District Court held this omission in an Ordinance affecting free speech made the regulation vague in the notice it gave and in its standard for enforcement. Since, in the judgment of the District Court, this exemption infected the entire Section, so far as it related to sound equipment in a private park, that Court enjoined temporarily the enforcement of the entire Section. We, however, do not agree that the grant of injunctive relief was proper under the circumstances.

We have decided in *U.S. Labor Party v. Pomerleau,* 557 F.2d 410, 412 (4th Cir.1977), in reviewing the Baltimore (Md.) Anti-Noise Ordinance, that the "right to amplify speech" is within the protection of the First Amendment. Of course, this is not to say that the States or their authorized municipalities may not regulate within reasonable limits such amplified "speech" or sound. *Kovacs v. Cooper, supra,* 336 U.S. at 89, 69 S.Ct. at 454; *Grayned v. City of Rockford, supra,* 408 U.S. at 112, 92 S.Ct. at 2301; *Reeves v. McConn, supra,* 631 F.2d at 382. The permissible limits of such regulations are governed largely by the "societal interests" to be served. *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 501, n. 8, 101 S.Ct. 2882, 2889, n. 8, 69 L.Ed.2d 800 (1981). So long as (1) the regulation is within the constitutional power of the State or its authorized subdivision, (2) it furthers an important or substantial governmental interest, (3) the governmental interest is unrelated to the suppression of free speech and (4) the incidental restriction on an alleged First Amendment freedom is no more than is essential to the furtherance of the governmental interest, the constitutional constrictions of the First Amendment are satisfied. *Heffron v. Int'l Soc. for Krishna Consc., Inc.,* 452 U.S. 640, 648, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981); *Metromedia, Inc. v. San Diego, supra,* 453 U.S. at 507, 101 S.Ct. at 2891; *United States v. O'Brien,* 391 U.S. 367 at 371, 88 S.Ct. 1673 at 1676, 20 L.Ed.2d 672 (1968); *Fantasy Book Shop, Inc. v. City of Boston,* 652 F.2d 1115, 1121 (1st Cir.1981); *Reeves v.*

*McConn, supra,* 631 F.2d at 386.[5] This principle does not require the governmental body "to adopt the least restrictive means of regulation no matter what the consequences," but only that "the reasonableness of its decision . . . be viewed 'in the light of less drastic means for achieving the same basic purpose.'" *Reeves v. McConn, supra,* 631 F.2d at 386.

■ But, even though the legislative action be properly deemed as one "encompassing government actions aimed at noncommunicative impact but nonetheless having adverse effect on communicative opportunity," it must admittedly meet vagueness requirements both for adequacy of notice of prohibited conduct and for standards of enforcement. *U.S. Labor Party v. Pomerleau, supra,* 557 F.2d at 412. In *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 497 and 495, n. 7, 102 S.Ct. 1186, 1193, 1192, n. 7, 71 L.Ed.2d 362 (1982), the Supreme Court recently stated the rule for determining whether a regulation met the vagueness standard. It declared that, in order to establish that a law is vague within the due process clause, one "must demonstrate that the law is impermissibly vague in all of its applications", and must "prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" The Court, also, added, that "[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Id.* at 494, n. 5, 102 S.Ct. at 1191, n. 5. And, in considering the language of an ordinance for vagueness, a Court is not to use a "mechanistic" standard, *Record Head Corp. v. Sachen,* 682

F.2d 672, 674 (7th Cir.1982), nor is the Court to expect "mathematical certainty" in expression but is to accept "'flexibility and reasonable breadth, rather than meticulous specificity'" as permissible, *Grayned v. City of Rockford, supra,* 408 U.S. at 110, 92 S.Ct. at 2300.

The use of this less strict standard for regulations "aimed at noncommunicative impact but nonetheless having adverse affect on communicative opportunity" than for regulations "aimed at communicative impact" was recognized in *Broadrick v. Oklahoma,* 413 U.S. 601, 614, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973), where the Supreme Court said that "scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner." This same idea was applied in two leading cases involving challenges to anti-noise ordinances. In *Grayned,* the Supreme Court emphasized, in resolving a vagueness challenge, that "Rockford's antinoise ordinance [which was under review] does not permit punishment for the expression of an unpopular point of view," thus bringing the ordinance within the category of regulations "aimed at noncommunicative impact," 408 U.S. at 113, 92 S.Ct. at 2302. The Court accordingly found that, though it was troubled by the vagueness of the words "tends to disturb," in the phrase "noise . . . which disturbs or tends to disturb" as constituting a violation under the ordinance, it could, by looking to other decisions of the State Courts construing similar or analogous words, assume the State Court would give a reasonable and valid construction to the term by limiting its application to "actual or imminent interference with the 'peace or

---

**5.** Professor Tribe in his text, *American Constitutional Law,* at 580–82 (Foundation Press, 1978) divides legislative regulations within the zone of the First Amendment protection as those "encompassing government actions *aimed at communicative impact*" and those "encompassing government action *aimed at noncommunicative impact* but nonetheless having adverse effects on communicative opportunity" (Italics author's). Where a regula-

tion falls within the second category, the constitutional test is one of "'balancing' of the competing interests," and the regulation's restrictions on speech will be "acceptable so long as they do not *unduly* constrict the flow of information and ideas." (Italics author's).

*See also,* Ely, *Flag Desecration: A Case Study in the Roles of Categorization and Balancing in First Amendment Analysis,* 88 Harv. L.Rev. 1482 (1975).

good order' of the school." 408 U.S. at 111 and 112, 92 S.Ct. at 2300–01.

In *Reeves v. McConn, supra,* the Court was confronted with an antinoise ordinance proscribing in this case noise "disturbing . . . to persons within the area of audibility." It referred to the similarity between this language and that reviewed by the Supreme Court in *Grayned.* Summarizing the Supreme Court's decision in *Grayned,* the Court said (631 F.2d at 386):

"The Supreme Court has expressed reservations about the word 'disturbs' in a similar ordinance. But in the expectation that a state court would interpret the term objectively to mean 'actual or imminent interference with . . . peace or good order,' the Court eventually found the term not unconstitutionally vague or overbroad" (referring to *Grayned,* 408 U.S. at 109–112, 92 S.Ct. at 2299–01).

The Court then said, in overruling the vagueness challenge in that case:

"We have a similar expectation with regard to subparagraph 6 [*i.e.* the one using the quoted language]. If actual experience with the ordinance were to demonstrate that it represents a subjective standard, prohibiting a volume that *any individual* person 'within the area of audibility,' happens to find *personally* 'disturbing,' we would not hesitate to change our judgment accordingly." (Italics author's)

Applying these precedents in *Grayned* and *Reeves* to the challenged language in this case, we have no difficulty in sustaining the Section against the charge of vagueness. The particular section of the ordinance now under review is not stated in the general terms of the statute in *Grayned* and *Reeves;* it is precise. It tells one and all the specific permissible volume of sound that may be generated by amplifying-equipment at very specific geographic points and at designated hours. This ordinance is thus quite different from the one found invalid in *Pomerleau,* where the point at which sound volume was measured varied at the caprice of the investigator. Unquestionably, an ordinance subject to such standardless enforcement as in *Pomerleau* falls within the vagueness prohibition of the due process clause and we so held. But, as we have said, that vice is not present here. The ordinance here is, also, different from the one found invalid in *United States Labor Party v. Rochford,* 416 F.Supp. 204 (N.D.Ill.1975), where the Court held the ordinance void for vagueness, largely because the prohibition was not stated in "decibel measurements or the amperes used by the amplifier." *Id.* at 207. The challenged Section of the ordinance does meet the standard of specificity demanded in *Rochford.* Section 13–53.1(1)(b) and (c) states that sound levels were to be measured under the standards for "frequency weightings" as specified in "American National Standards Institute, Publication ANSI, S 1.4–1971." In addition, OSHA has incorporated those "noise measurement requirements," including the method of measuring test periods, of the Standards Institute in certain regulations set forth in 34 CFR, § 96. The required "measurement period" under these OSHA regulations and under the Standards is well known in the trade.

Accordingly, the plaintiffs' expert, whose affidavit was offered by them in the hearing before the District Court, unquestionably understood how sound was to be measured, including the "measurement period" to be used. When he made various tests at certain points for noise volume for presentation on behalf of the plaintiffs in this case, he affirmed that his measurements followed "the OSHA noise measurement requirements set forth in 34 CFR Sec. 96." The plaintiffs and their expert manifestly by his own statement had no difficulty in defining the "measurement period" for these tests. They were not forced nor did they claim they were forced, to "speculate" or "guess" about what an acceptable "measurement period" was under the Ordinance in making their tests because they manifestly understood what the term required. In addition, it is somewhat interesting that the plaintiffs themselves alleged "[u]pon information and belief" that "the sounds generated by the public address system [in

**494**

their private park] violate the provisions of the article." This statement suggests inescapably that either the plaintiffs or those they consulted understood what the sound "measurement period" was and the result of measurements of sound made in line with such definition.

We might add that we find this ordinance far more definite and specific in this section that the ordinances found valid in *Grayned* and *Reeves.* It is obviously not subject to the infirmity of standardless enforcement which caused this Court in *Pomerleau* to invalidate for vagueness the Baltimore anti-noise ordinance. It follows that Section 13–53.1 is not facially void for vagueness and its enforcement should not be enjoined on the record which was before the District Court on the motion for a preliminary injunction.

## VI

To summarize; We affirm the finding that the term "unnecessary" in Section 13–52 is unconstitutionally vague but sustain the validity of the balance of such Section. Accordingly, the injunction against the enforcement of the prohibition against "unnecessary" noise, as declared in Section 13–52 is affirmed but the temporary injunction against the enforcement of other parts of Section 13–52 is vacated.

We also affirm the finding that Section 13–55(1) is invalid and sustain the temporary injunction against its enforcement.

We hold that the finding that Section 13–53(1) was vague is in error and we vacate the temporary injunction against its enforcement.

AFFIRMED IN PART and REVERSED IN PART.