## Commonwealth v. Moyer

*Louis J. Farina,* for Commonwealth.
*S. R. Zimmerman, III,* for defendant.

ECKMAN, *J.,* April 26, 1984—On December 27, 1982, defendant Sidney Moyer, was charged with violating the Lancaster Noise Control Ordinance[1] (hereafter ordinance) of the City of Lancaster, a third class city (hereafter city) and with disorderly conduct.[2] At a hearing before District Justice William A. Hull, Jr., defendant was convicted of violating §§734.04(a) 734.04(b)(1)A, 734.04(b)(2) and 734.04(b)(3)A of the ordinance, but was found not guilty of disorderly conduct. Defendant appealed to this court. After a hearing de novo on September 27, 1983, defendant was convicted of violating §§734.04(a) and 734.04(b)(1)A only. Defendant filed a timely written motion in arrest of judgment. Briefs having been submitted by the parties, the motion is now before the court for disposition. This opinion is being written without the benefit of the notes of testimony having been transcribed.

---

1. Lancaster, Pa., Ordinance, Article 734, Noise Control.
2. Crimes Code, Act of December 6, 1972, P.L. 1482, §1, 18 Pa. C.S. §5503.

## FACTUAL HISTORY

The evidence adduced at the hearing discloses that on Christmas Day, December 25, 1982, Officer Richard Finefrock of the City Police Department was dispatched to defendant's home on South Shippen Street, Lancaster, Pennsylvania, pursuant to a citizen's complaint. At approximately 5:00 a.m., Officer Finefrock parked his car across the street from defendant's home. Upon exiting his vehicle, Officer Finefrock heard sound in the form of voices coming from defendant's cassette tape player inside defendant's home, which became louder as he approached defendant's premises. Officers David Aichelle and Sergeant Kenneth Armentrout were subsequently dispatched to the scene when defendant refused to cooperate with Officer Finefrock's requests. Sergeant Armentrout heard voices from the street and the sidewalk. Officer Aichelle testified that he heard sound emanating from defendant's cassette tape player from across the street as well as the voices of defendant and the officers.

## ISSUES

Defendant has attacked the constitutionality of the ordinance in a myriad of ways. He contends that the ordinance is unconstitutional (1) because the subject area of the ordinance is preempted by the Commonwealth and the ordinance is beyond the authority delegated by the legislature and (2) that the ordinance is vague and incapable of clear understanding, overbroad, invasive of rights of privacy and places an unconstitutional burden on defendant to prove his freedom from guilt. Finally, defendant contends that the verdict was against the weight of the evidence as the prosecution failed to prove all essential elements of the charges beyond a reasonable doubt.

## DISCUSSION OF ISSUES AND LAW

A municipal ordinance is presumed to be constitutional to the same extent as an act of the Legislature. Simco Sales Service of Pennsylvania, Inc. v. Township of Lower Merion Board of Commissioners, et al., 38 Pa. Commw. 434, 394 A.2d 642 (1978). The party challenging the constitutionality of an ordinance carries the burden of proving its invalidity. Commonwealth v. Sterlace, 24 Pa. Commw. 62, 354 A.2d 27 (1976). "Where a reasonable interpretation can be adopted, which will save the constitutionality of an ordinance, it is the court's duty to adopt it." Kadash v. City of Williamsport, 19 Pa. Commw. 643, 650, 340 A.2d 617 (1975). With these broad principles in mind, we will address defendant's contentions seriatim.

Initially, defendant contends that the ordinance invades a subject area preempted by the legislature and goes beyond the authority delegated by the legislature. Section 303 of the Optional Third Class City Charter Law[3] (hereafter charter law), which the city has adopted as its form of government, states, inter alia:

"Each city governed by an optional form of government pursuant to this act shall, subject to the provisions of and limitations prescribed by this act, have full power to:

(2) *Adopt and enforce local police ordinances of all kinds and impose penalties* of fine not exceeding three hundred dollars ($300), or imprisonment for any term not exceeding ninety days, or both, for the violation thereof; . . ." (Emphasis supplied.)

---

3. Act of July 15, 1957, P.L. 901, §303, 53 P.S. §41303, Supplement.

Section 304[4] provides:

"The general grant of municipal power contained in this article is intended to confer the greatest power of legal self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. *All grants of municipal power to cities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the city.*" (Emphasis supplied.) Limitations referred to in section 303 are contained in Section 305[5], which provides, inter alia:

"Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:

(2) Applicable in every part of the Commonwealth.

(3) Applicable to all cities of the Commonwealth."

Pursuant to the broad powers of section 303(2), supra, the city enacted the ordinance, which contains the following pertinent provisions that are relevant to our discussion:

"734.01 PURPOSE

Council, finding that excessive levels of sound are detrimental to the physical, mental and social well-

---

4. Act of July 15, 1957, supra; 53 P.S. §41304, Supplement.

5. Act of July 15, 1957, supra; 53 P.S. §41305, Supplement.

well-being of the residents as well as to their comfort, living conditions, general welfare and safety, and being therefore a public health and welfare hazard, hereby declares it to be necessary to provide for the greater control and more effective regulation of excessive sound and the sources of excessive sound with the City.

"734.03 DEFINITIONS

The following words, terms and phrases when used in this article shall have the meaning herein given, except where the context clearly indicates a different meaning.

. . .

(j) 'Noise disturbance' means any sound which:

(1) Endangers or injures the safety or health of humans or animals; or

(2) Annoys or disturbs a reasonable person of normal sensitivities; or

(3) Endangers or injures personal or real property; or

(4) Is in excess of the sound levels by zoning districts established in Section 734.05.

. . .

(m) 'Public right of way' means any street, avenue, boulevard, highway, sidewalk, alley or similar place which is owned or controlled by a governmental entity.

. . .

(p) 'Property line (boundary)' means an imaginary line drawn through the points of contact of adjoining lands, apartments, condominiums, townhouses and duplexes owned, rented or leased by different persons, a demarcation or a line of separation of properties, and also, for any two or more buildings sharing common grounds, the line drawn midway between any two such buildings. All areas devoted to public rights of way shall be deemed to

be across the property line. For the purpose of this definition, the property line includes all points on a plane formed by projecting the property line in a manner deemed appropriate by the enforcing police officer.

. . .

(r) 'Sound' means an oscillation in pressure, particle displacement, particle velocity or other physical parameter, in a medium with internal forces that causes compression and rarefaction of that medium, or the superposition of such propogated oscillation which evokes an auditory sensation. The description of sound may include any characteristics of such sound, including duration, intensity and frequency.

## "734.04 PROHIBITED ACTS: VIOLATIONS.

(a) Noise Disturbance Prohibited. No person shall make, continue, or cause to be made or continued any noise disturbance, nor shall any person suffer, allow or permit any noise disturbance to be made or continued from or at any property, whether real or personal, that is subject to such person's right to control.

(b) Specific Prohibitions. The following acts, and the causing thereof, are declared to be noise disturbances and therefore in violation of this article:

(1) Radios, television sets, musical instruments and similar devices. Operating, playing or permitting the operation or playing of any radio, television, phonograph, drum, musical instrument, sound amplifier, automobile radio, automobile stereo, high fidelity equipment or similar device which produces, reproduces or amplifies sound:

A. At any time in such a manner as to cause a noise disturbance across a property line (boundary), or between the hours of 9:00 p.m. and 8:00 a.m. so

as to be plainly audible across a property line (boundary);

. . .

(d) Prima-Facie Violation. The noise from any of the aforesaid prohibited acts that disturbs two or more residents who are in general agreement as to the times and durations of the noise and who reside in separate residences, including apartments and condominiums, located across a property line (boundary) from the property on which the source of the noise is generated, shall be prima facie evidence of a noise disturbance.

"734.99 PENALTY

(a) Whoever violates any provisions of this article shall, upon conviction thereof, in a summary proceeding, be fined not more than three hundred dollars ($300.00) for each offense, to be collected as other fines and costs are by law collectible, or imprisoned for not more than ninety days or both. Each day during which a violation occurs shall constitute a separate offense."

In contending that the ordinance invades a subject area preempted by the legislature, defendant specifically asserts that the ordinance is unconstitutional because section 734.04(b)(1)A, supra, governs the same activity as Pennsylvania's Disorderly Conduct Statute. The Crimes Code[6] defines disorderly conduct, inter alia, as follows:

"(a) Offense defined. — A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . .

(2) makes unreasonable noise;

---

6. Crimes Code, supra; 18 Pa. C.S. §5503.

. . .

(c) Definition. — As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public."

In United Tavern Owners of Philadelphia v. Philadelphia School District, et al., 441 Pa. 274, 280, 272 A.2d 868 (1971), the Pennsylvania Supreme Court stated the standard for preemption, as follows:

"In determining whether, by the enactment of the specific statute, the Commonwealth completely barred a municipality's enactment of an ordinance relating to the same field, we will refrain from striking down the local ordinance *unless the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers* that by striking down the local power can the power of the wider constituency be protected." (Emphasis supplied.)

Our research fails to disclose that the legislature reserved the exclusive right to legislate in this area. Nor does our review of the applicable provisions disclose an actual or material conflict between the statute and the ordinance. The statute requires intentional or reckless conduct by defendant. The ordinance simply prohibits making excessive sound without reference to defendant's mental state in order to protect the public health and welfare. The ordinance protects people within their homes, Ordinance, section 734.01, supra, while the purpose of the statute is to protect the public where it has access. See 5503(c), supra. Furthermore the ordinance defines prohibited noise with specificity

while the Crimes Code prohibits "unreasonable noise".

Defendant relies on City of Chester v. Elam, 408 Pa. 350, 355-356, 184 A.2d 257 (1962), for the proposition that ". . . a third class city cannot . . . define disorderly conduct in a manner that does not bear striking resemblance to the definition contained in the Penal Code." Defendant assumes that the ordinance is actually a disorderly conduct ordinance and must be set forth in similar language to the Crimes Code. In light of our previous discussion of the provisions and purposes of the ordinance and the statute, we find this contention to be meritless.

Next, defendant contends that the ordinance is unconstitutional because it is vague and incapable of being understood by men of common intelligence.

It is well settled that as a matter of due process a statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice of what conduct is forbidden under the statute. Colautti v. Franklin, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed. 2d 596 (1979). In Commonwealth v. Heinbaugh, 467, Pa. 1, 354 A.2d 244 (1976), the Pennsylvania Supreme Court stated the applicable standard, as follows:

"Statutes which are challenged on the ground of vagueness are not, however, to be tested against paradigms of legislative draftsmanship. The fact that [the legislature] might without difficulty have chosen 'clear and more precise language' equally capable of achieving the end which is sought does not mean that the statute which it in fact drafted is unconstitutionally vague. (Citation and quotations omitted.) Rather, the requirements of due process are satisfied if the statute in question contains *rea-*

*sonable* standards to guide the prospective conduct." Id., 467 Pa. at p. 6.

In Panther Valley Television v. Summit Hill Borough, 376 Pa. 375, 102 A.2d 699 (1954), the Pennsylvania Supreme Court stated the applicable test, as follows:

"Where a statute is 'so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative.' " Id., 376 Pa. at p. 378.

Where a statute contains its own definitions, the definitions control the meaning of a term defined at common law or under prior statutes. Commonwealth v. Lobiondo, 501 Pa. 599, 462 A.2d 662 (1983). Any person who challenges the validity of an ordinance must clearly establish that the ordinance is arbitrary and unreasonable, with no relationship to public health, safety, morals and general welfare. Appeal of Kates, et al., 38 Pa. Commw. 145, 393 A.2d 499 (1978). The court has the duty to adopt a reasonable interpretation, where it can be done, to save the constitutionality of an ordinance. Kadash v. City of Williamsport, supra.

Defendant attacks specific language in the ordinance. Defendant contends that the word "sound", 734.03(r), as defined in the ordinance is vague because it is precise and technical and, therefore, so is the definition of "noise disturbance", 734.03(j),. which includes certain types of sound. Hence, every section of the ordinance that uses those terms is vague. Upon review of the definition of "sound" in the ordinance, we find that it is precise and technical. The definition, however, is capable of ordinary understanding in that a sound "evokes an auditory

sensation." The definition does not alter the common meaning of the word "sound." We believe that a person with common intelligence can understand when an auditory sensation is evoked, or when the person emits a "sound."

As to defendant's contention that "noise disturbance" is vague as a prohibited activity because the term includes "any sound" as enumerated in section 734.03(j)(1), (2), (3) and (4), supra, we also find it to be meritless. These sections plainly and clearly set forth the conduct that is prohibited in terms that are capable of being understood by persons of common, ordinary intelligence, and give fair notice of the types of conduct that are prohibited.

Defendant also asserts that the definition of "property line", section 734.03(p), supra, is vague in that it allows a police officer to draw the property line at his discretion in each particular case. Instantly, the police officer could hear the tape player from across the street and from the sidewalk. The ordinance clearly states that areas devoted to public rights of way are deemed to be across the property line. We believe that this definition is capable of understanding by a person of ordinary intelligence and defendant's contention is without merit.

Defendant next objects to the last sentence of section 734.03(p) of the ordinance, which is not the part of the definition applicable to defendant in the present case. Defendant does not have standing to challenge the constitutionality of that particular provision since an individual in any enforcement proceeding does not have standing to object to the constitutionality of a statute unless he is affected by that part alleged to be in conflict with the Constitution. Commonwealth v. Bottchenbaugh, 306 Pa. Super. 406, 452 A.2d 789 (1982). Defendant cites Commonwealth v. Wadzinski, 492 Pa. 35, 422 A.2d

124 (1980), where the Supreme Court in a footnote recognized that in First Amendment cases, the traditional standing rules are altered so that challenges to the facial validity of a statute are permitted. The ordinance, however, regulates conduct and claims by defendant of First Amendment infringement are tenuous at best.

Defendant also contends that the ordinance is vague as section 734.04(d), supra, is not clear whether it mandates what the prosecution must show in order to prove a prima facie violation or merely represents one method. Defendant also contends that the ordinance is unconstitutional since this section places the burden on defendant to prove his freedom from guilt. Defendant asserts that section 734.04(d), supra, impermissibly shifts the burden of proof to defendant whenever two or more residents agree that defendant's noise is disturbing.

Since defendant was not prosecuted pursuant to the provisions of section 734.04(d), he again does not have standing to challenge its constitutionality as he is not affected by that section of the ordinance. Commonwealth v. Bottchenbaugh, supra. Further, the ordinance does not create a presumption of guilt, but merely establishes evidence of a prima facie violation. Defendant's reliance on Jim Crockett Promotions v. City of Charlotte, 538 F. Supp. 1197 (W.D., N.C. 1982), in support of his contention is misplaced. There, the ordinance defined prima facie evidence as creating a presumption of guilt. No such presumption is contained in the present ordinance.

Defendant next asserts that the ordinance is overbroad and that it prohibits plainly audible sounds across property lines between the hours of 9:00 p.m. and 8:00 a.m. The United States Supreme Court stated the applicable principle ·in

Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed. 2d 830 (1973), as follows:

". . . where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

A governmental unit has no power to restrict an activity because of its message, but reasonable time, place and manner restrictions may be utilized to further governmental interest. Grayned v. City of Rockford, 408 U.S. 104, 144, 92 S.Ct. 2294, 33 L.Ed. 222 (1972). In Commonwealth v. Reyes, 2 D. & C. 3d 400, 404 (1977), involving an appeal from a summary conviction for violation of an anti-noise ordinance, the court upheld the ordinance as not overbroad, stating that the ordinance proscribed ". . . conduct and seeks to maintain peace and tranquility. It is not intended to restrict expression or communication."

Similarly, in the present case, we believe that the ordinance, as it affects defendant, is not overbroad in that it is directed toward conduct and not communication. As in Reyes, it seeks to maintain peace and tranquility. The ordinance prohibits noise by a variety of devices during the hours which are usually used by citizens to sleep and when quiet customarily prevails in the streets. As such, the ordinance cannot be considered overbroad.

In summary, an application of the "reasonable certainty test" enunciated in Panther Valley Television, supra, to the ordinance leads us to reject defendant's claims that the ordinance should be declared void for vagueness and overbroadness. The ordinance clearly defined its purpose, identifies the subject matter of the ordinance and the type of conduct that is prohibited and provides detailed defini-

tions for all key terms. We believe that the ordinance is sufficiently specific to meet the "reasonable certainty" test of Panther Valley Television, supra, and therefore conclude that the provisions of the ordinance are not void for vagueness or overbroadness.

Citing section 734.04(b)(1)A, supra, of the ordinance, defendant next alleges that the ordinance is an unconstitutional invasion of his right to privacy as there is no requirement or reasonable limitation that such sounds cause a noise disturbance or unreasonable breach of the peace. Therefore, defendant alleges that the ordinance unduly and unreasonably restricts his use of his property without compensation.

While the individual right to privacy is a hallmark of a free society, Commonwealth v. Helms, 234 Pa. Super. 537, 343 A.2d 362 (1975), the government may exercise its police power for the purpose of preserving the public health, safety and morals and in order to accomplish that objective may limit the enjoyment of personal liberty and property. Simco Sales Service of Pennsylvania, Inc. v. Township of Lower Merion Board of Commissioners, et al., supra. The exercise of police power involving regulations of property to promote health, safety and general welfare, does not require compensation to the property owner. Redevelopment Authority of Oil City v. Woodring, 498 Pa. 180, 445 A.2d 724 (1982).

We find that the ordinance constitutes a proper exercise of police power. Although defendant may believe that in accomplishing that purpose, the ordinance limits the enjoyment of his property, it does not do so indiscriminately but acts to benefit the public as a whole with minimal intrusion, if any, upon the rights of defendant. As the ordinance is an exercise of the municipality's police power, defen-

dant's assertion that the ordinance restricts use of his property without just compensation is without merit. Redevelopment Authority of Oil City v. Woodring, supra.

In conclusion, we find that the ordinance is not arbitrary nor unreasonable and that it does have a relationship to the public health, safety, morals and general welfare. Appeal of Kates, supra. Therefore, we find that the ordinance is constitutional. Kadash v. City of Williamsport, supra.

Finally, defendant asserts that the verdict is against the weight of the evidence because the prosecution failed to sustain its burden of proof as to all essential elements of the charges against defendant beyond a reasonable doubt.

"[T]he assertion that the verdict is against the weight of the evidence is not a proper consideration in passing on a motion in arrest of judgment, [however], a criminal defendant may be given a new trial on that ground . . ." Commonwealth v. Meadows, 471 Pa. 201, 208-209, 369 A.2d 1266 (1977). The proper procedure to challenge the weight of the evidence is by a post-verdict motion for a new trial. In contrast, the proper procedure to challenge the sufficiency of the evidence is by a post-verdict motion in arrest of judgment. Commonwealth v. Holmes, 315 Pa. Super. 256, 461 A.2d 1268 (1983); See Pa. R. Crim. P. 1123-1124.

Assuming, arguendo, that defendant has alleged that the evidence is insufficient in his motion, when the sufficiency of the evidence to sustain a criminal conviction is challenged the test is:

". . . whether the evidence admitted at trial is sufficient to prove . every element of the crime . . . charged beyond a reasonable doubt. (Citations omitted.) In making this determination, the reviewing court must view the evidence in the light most fa-

vorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the factfinder could properly have based its verdict." Commonwealth v. Davis, 491 Pa. 363, 369, 421 A.2d 179 (1980). Even if the evidence is wholly circumstantial it may be sufficient to uphold the conviction. Commonwealth v. Joyner, 489 Pa. 502, 414 A.2d 1003 (1980).

With this standard in mind, we have examined the evidence, supra, tested against the ordinance, on which defendant stands convicted. We believe that the evidence was more than sufficient to establish beyond a reasonable doubt that defendant violated the ordinance provisions by creating a noise disturbance, so as to annoy a reasonable person of normal sensitivities.

Accordingly, we enter the following

## ORDER

And now, April 26, 1984, the post-verdict motion in arrest of judgment filed by defendant, Sidney Moyer, is dismissed. Defendant is directed to appear for sentencing at the call of the district attorney.